### Ex parte HAGGERTY et al.

#### (Circuit Court, N. D. West Virginia. August 6, 1902.)

1. COURTS—CONTEMPT—HABEAS CORPUS.

Where petitioners were imprisoned for violation of a strike injunction, the only question reviewable on habeas corpus to secure their discharge was whether the court had jurisdiction to grant the injunction.

2. LABOR—INTIMIDATION OF EMPLOYÉS—STRIKES—INJUNCTION—PARTIES.

A bill for injunction to restrain intimidation of certain employés alleged that complainant, a resident of New York, held a large mortgage on the property of a fuel company located in West Virginia, which required the latter to pay interest on the bonds secured semiannually, which it would be enabled to do only in case it derived income from the operation of its plants, and that if the plants were closed, or interfered with, injured, or destroyed, neither such interest nor the principal could be paid; that the defendants, who were residents of various states other than New York or West Virginia, were and had been unlawfully engaged in a conspiracy to prevent the mortgagor's employés from remaining in its employment; and that defendants had been congregating around the mortgagor's mines and place of business for the purpose of intimidating its employés, inducing them to strike, etc.; and prayed an injunction restraining defendants from such interference. Held, that, since the bill prayed no relief against the mortgagor, the latter was not a necessary party thereto.

3. SAME—FEDERAL JURISDICTION.

Where, in a suit in the federal courts for an injunction against strikers, the court's jurisdiction depends on the residence of the parties, a party

¶ 1. See Habeas Corpus, vol. 25, Cent. Dig. § 95.

interested in the subject-matter need not be made a party to the suit where his joinder would oust the court of jurisdiction, provided a final decree against the parties before the court, consistent with equity and good conscience, can be made.

Petition for Writ of Habeas Corpus.

John J. Coniff and A. G. Fiekeison, for petitioners.

A. B. Fleming, J. J. Davis, J. W. Davis, and Reese Blizzard, for respondents.

GOFF, Circuit Judge. On the petition of Thomas Haggerty, George Baron, and Andrew Raskawee, of the state of Pennsylvania, William Morgan, of the state of Ohio, William Blakely, of the state of Indiana, and Peter Wilson, of the state of Illinois, alleging that they were illegally restrained of their liberty by C. D. Elliott and J. W. Dudley, I directed that the writ of habeas corpus issue, returnable before me on the 5th day of August, 1902. On that day due return was made by said parties, and the petitioners were produced before me. By the return it appears that C. D. Elliott is the United States marshal for the Northern District of West Virginia, and that J. W. Dudley is the sheriff of Wood county, W. Va., and as such the jailer of that county, and that they as such officials have the custody of and detain the said petitioners by virtue of a judgment of conviction against each of them, rendered by the Hon. John J. Jackson, on the 24th day of July, 1902, he then, as District Judge for the Northern District of West Virginia, holding the Circuit Court for that district, for a contempt of the orders of that court by them and each of them theretofore committed. Such orders had been entered by that court in the equity suit of the Guaranty Trust Company of New York filed against Thomas Haggerty and others, for the purpose of restraining such defendants from entering upon and trespassing upon the lands and property of the Clarksburg Fuel Company, a corporation organized under the laws of the state of West Virginia, and doing business in that state; also to restrain them from going on the said company's tipples, tracks, and other property for the purpose of unlawfully preventing that company's employés remaining in its employment; also restraining them from assembling, congregating, or camping at or near any of the mines or places of business of that company, or the roads traveled by its employés in going to and from their work, for the purpose of preventing, by intimidation, such employés from continuing in said employment; also restraining them from unlawfully interfering with the management of that company's business, and from assembling together, and marching at or near the mines of said company, with a view of preventing such employés from working.

It appears from the record that on the filing of said bill the court issued the injunction as prayed for, and that it was duly served on the defendants, the petitioners mentioned. Afterwards the petitioners were arrested, charged with violating the terms of the injunction, and were, after due investigation of said charges by the court, found guilty of the willful infraction of the provisions of the injunction order, and sentenced for such contempt, the said Haggerty for 90 days' con-

finement, and the others for 60 days each, in the jail of Wood county, W. Va. Petitioners now insist that they should be discharged, for the reason that the court so imprisoning them was without jurisdiction of the cause mentioned, and that, therefore, its injunction orders and subsequent judgments were and now are null and void. If that contention be sustained, then the petitioners are improperly and unlawfully deprived of their liberty, and should be discharged.

I am not hearing the case of Guaranty Trust Co. v. Haggerty et al. on appeal, nor am I passing upon the weight of the evidence upon which judgments of conviction were rendered, nor any of the questions connected with the trials or the rules for contempt. Such matters can only be considered by an appellate court, and the writ of habeas corpus cannot be used as a writ of error or appeal. I am therefore to consider the question of jurisdiction alone.

It appears from the bill that the Clarksburg Fuel Company, on the 26th of September, 1901, executed a mortgage on all of its property to the Guaranty Trust Company of New York, to secure the payment of $2,500,000, of which sum $1,450,000 is still due and payable. It also appears that by the terms of the mortgage the whole of such indebtedness will become due and payable if default be made in the payment of the semiannual interest due on the 1st days of April and October of each year; that such trust company is the trustee named in the mortgage, and that it has loaned the Clarksburg Fuel Company $950,000, to secure the payment of which such company has deposited with the trust company 2,000 of the bonds of the fuel company of the aggregate value of $2,000,000. It is alleged in the bill that the Clarksburg Fuel Company will not be able to pay, from its earnings or otherwise, the interest accruing on its bonds, except by means of the income it may derive from the operations of its several coal mining plants, and that if such plants be closed or interfered with, or injured or destroyed, such interest cannot be paid, nor can the principal of said bonds be discharged. It is also alleged that the petitioners, defendants in said suit, have come among the employés of said company for the purpose of endeavoring to create dissatisfaction among them and to induce them to engage in the "strike" prevailing among the coal miners of the country, especially in the states of Pennsylvania and West Virginia; that in furtherance of that object they have had a large number of persons to march in procession near the mines of the Clarksburg Fuel Company; that they have held or addressed meetings, making inflammatory speeches intended to excite dislike and hatred of all persons owning and operating coal mines, especially of the officers and managers of the Clarksburg Fuel Company; that they have caused strikers and others to march in large numbers along the county roads, by the residences of the miners working in the mines of that company, and by and along the paths they travel in going to and from work, and have threatened them, intimidated them, and fired shots from guns and pistols, until said employés have become frightened and are afraid to work; that employés of such coal company have been intimidated, assaulted, and threatened because they would not cease working for it, and this in an effort to carry out the designs and conspiracies set on foot by such defendants; that they

have established camps very near said mines for the purpose of coercing said employés and forcing them to join in such strike; that, if the defendants and their associates be permitted to continue their threats, marching, camps, and intimidation, all or a large portion of said employés may be induced to cease labor, and that thereby irreparable injury will result to said company and the complainant; that because of all such actions by defendants the Clarksburg Fuel Company cannot successfully prosecute its business; that the Guaranty Trust Company is without remedy at law, and can only find protection in equity. To this bill no appearance had been entered, nor any answer or demurrer filed, nor plea tendered, at the time the judgments of conviction against the petitioners were pronounced. The allegations of the bill were not denied, and so far as the proceedings in equity were concerned they stood uncontroverted when such judgments were entered.

The claim of want of jurisdiction in the court rendering the judgments complained of is based on the fact that the Clarksburg Fuel Company was not made a party to said suit. Is such insistence supported by the law and the practice in cases of this character?

Counsel for petitioners admit that a mortgagee may maintain such suit as said complainant has instituted, but they insist that the mortgagor must of necessity be made a party thereto. Ordinarily that is true. Is it always so? Are there circumstances under which it is not necessary?

On the bill mentioned, the salient points of which I have referred to, can a decree be entered that will dispose of the questions raised, without the presence of the Clarksburg Fuel Company? I think that it can. Has the complainant any controversy with that company, and is any relief asked for from it, or is any decree prayed for against the defendants the granting of which by the court requires any disclosure from that company, in order that full and complete justice may be done? In other words, is there equity in the bill as it was drawn and filed? I find that there is. The Guaranty Trust Company, a citizen of the state of New York, is entitled to be heard in the Circuit Court of the United States for the Northern District of West Virginia concerning property located in that district, as to which it has interests amounting to over $1,000,000, which it alleges certain citizens of West Virginia and of states other than New York are conspiring together for the purpose of injuring and destroying. Has not the Guaranty Trust Company such an interest in this property, as trustee and as creditor, as will require a court of equity to entertain its complaint, under the circumstances set forth in this bill, even though its mortgagor is not a party? What claim does the Guaranty Company set up that in any way antagonizes the interests of the Clarksburg Fuel Company? If the fuel company were in collusion with the defendants, or if it denied the validity of the mortgage, or if there were a question as to the title to its property, or its right to mine and sell coal and employ men for that purpose, or if the suit were a foreclosure proceeding, then it would not only be a proper, but an indispensable, party. The cases cited by counsel for petitioners (Consolidated Water Co. v. Babcock [C. C.] 76 Fed. 243; Consolidated

Water Co. v. City of San Diego et al. [C. C.] 84 Fed. 369; Id., 93 Fed. 849, 35 C. C. A. 631) have had my careful scrutiny, and with the reasoning and conclusions therein respectively reached I am, under the circumstances of those cases, in full accord. They differ radically in some particulars from the case we are now considering, although in some respects they are quite similar to it.

In the first case mentioned, the point relied on is that it was held that, where a person is so related to the subject-matter of the suit that his rights must unavoidably be passed upon by the court in reaching a decree, he is a necessary party. That point I have already in effect considered and disposed of, as I understand its application to cases such as this. The second case mentioned decides that, in a suit by a mortgagee of a water company, the object of which is to enjoin the enforcement of an ordinance of a city fixing water rates, the mortgagor is a necessary party. Surely that must be so, and surely the questions raised by the bill in the case of Guaranty Trust Company of New York v. Thomas Haggerty et al. are not identical with those existing in the case just cited, in which the city, through its municipal authorities, had established an ordinance fixing the rate at which water should be furnished, such ordinance being alleged to be null and void upon the ground that the rates therein established were so unreasonably low as to amount to the taking of the mortgaged property without just compensation. In that case the water company was directly and not incidentally affected by any decree which could be rendered therein. The last case cited is in fact the same as the second, only that it was heard on appeal, and is distinguished from the one we now consider, as I have already stated.

The case of Board of Trustees of Oberlin College v. Blair et al. (C. C.) 70 Fed. 414, is also relied on by the petitioners, especially the reference therein to the forty-seventh rule of equity practice in the courts of the United States. Said rule was held not applicable to that controversy, for the reason that the parties the court was asked to dismiss from that suit were held under the facts there existing to be indispensable, and in their absence the court would on that account have been prevented from entering a decree disposing of the rights of all the claimants to the property in dispute. If there can be a case in which it is proper to proceed to decree in the absence of a party, who could with propriety have been made a defendant but for the fact that thereby the jurisdiction of the court would have been ousted, it is this case, and the discretion which I must presume the court exercised was I think wisely resorted to, as under all the circumstances the fuel company was a dispensable party, the bill seeking no relief against it, and its presence before the court not being essential to the equitable disposition of the questions raised, so far as the other defendants were concerned.

The limitation of the jurisdiction of the courts of the United States by the citizenship and nonresidence of the parties has caused a modification of the general rule of the English chancery practice relating to who shall be made parties to equity suits. A discussion of the modifications now existing is not deemed essential in this cause, further than to say that in cases like this if the joinder of a party, inter-

ested though he be in the subject-matter of the controversy, would oust the jurisdiction of the court, he need not be made a party, provided a final decree between the parties before the court can be made, and not be inconsistent with equity and good conscience.

With the questions of fact passed upon by Judge Jackson I have in this proceeding nothing to do. It is only with questions of practice that I now deal, with matters relating to our Code of Procedure, by which the rule of our conduct is regulated, which in fact constitutes the law, of which it has been beautifully said that "there is nothing so high as to be beyond the reach of its power, and nothing so low as to be beneath its care."

Having jurisdiction of the cause, and finding that its orders had been intentionally disregarded, the court exercised that right inherent to all judicial tribunals to punish those so in contempt. Not to do so would result in inextricable confusion, in riot, disorder, bloodshed, and anarchy. Such punishment is expressly authorized by Act Cong. March 2, 1831, c. 99, 4 Stat. 487, which limits the power of the United States Circuit and District Courts to punish for contempt to cases of misbehavior in the presence of or near to the court, to the misbehavior of any of the officers of said courts in their official transactions, and disobedience or resistance to any lawful writ, process, order, rule, decree, or command of the court. Since courts have been organized this power has been found necessary to the due administration of justice. Its existence has been declared by the Supreme Court of the United States, and its absolute necessity has been announced by that court of last resort. Ex parte Robinson, 19 Wall. 505, 22 L. Ed. 205; In re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092. To the judgment of that great tribunal provided for by the Constitution of our fathers all must submit, and to it we all confidently turn for advice and direction, bowing to its authority, even though its decree causes us to pass under the rod of its discipline and justice.

I find it to be my duty to remand the petitioners to the custody of the marshal and of the jailer, and an order to that effect will be entered.