CHESAPEAKE & O. COAL AGENCY CO. v. FIRE CREEK COAL & COKE CO. et al.

(Circuit Court, S. D. West Virginia. December 12, 1902.)

1. JURISDICTION OF FEDERAL COURTS—DISTRICT OF SUIT.

A circuit court of the United States is without jurisdiction of a suit as against defendants who are nonresidents of the district, where the complainant is also a nonresident, and the only ground of jurisdiction is diversity of citizenship, unless such defendants directly waive their privilege by submitting themselves to the jurisdiction of the court; and the filing of a demurrer to the bill, although on other grounds, is not such a waiver.

2. INJUNCTION—RIGHT TO RELIEF—UNLAWFUL INTERFERENCE WITH PERFORMANCE OF CONTRACT.

The bill of plaintiff corporation alleged that it was engaged in the business of selling coal and coke; that it had contracts with defendant coal companies by which it was to take all their product at the mines, to furnish transportation, and sell the same at prices fixed by the companies, receiving a stipulated sum per ton for its services; that by the terms of such contracts defendants were not liable for damages for failing to furnish coal to plaintiff, where such failure was caused by strikes; that in reliance on such contracts plaintiff had made contracts for the sale of large quantities of coal and coke, and had provided vessels for its transportation from the seaboard; that the defendant companies were willing to furnish such coal and coke, but were prevented from doing so by the wrongful and illegal acts of individual defendants, who were conducting a strike among the miners, and who by intimidation and threats prevented others from working in the mines. Held, that the bill showed such contract rights in plaintiff as entitled it to maintain the suit in its own right for their protection, independently of the defendant companies, and that it stated a cause of action for an injunction against the individual defendants to prevent their further unlawful interference with the performance of the contracts by the coal companies; it being further shown that plaintiff was without adequate remedy at law.

8. SAME—PARTIES.

To such suit the coal companies were proper parties defendant; but the fact that they might not be averse to the granting of the relief prayed for would not authorize the court to align them on the side of the plaintiff in the suit, where that would defeat the court's jurisdiction, since plaintiff did not sue in their right, but in its own.

In Equity. On demurrers to bill.

J. W. St. Clair, C. W. Dillon, and W. E. Chilton, for plaintiff.
Chas. E. Hogg and S. C. Burdett, for defendants.

KELLER, District Judge. This case comes up on demurrer to the bill herein. The defendants jointly and severally, and defendant G. W. Purcell separately, have interposed their demurrers to the bill filed herein, setting up the following as grounds for the demurrers:

"First. That the said plaintiff has not, in and by the said bill, made or stated any such case as doth or ought to entitle it to any such discovery or relief as is thereby sought and prayed, from, for, and against these defendants or any of them.

"Second. Because, as appears from the said bill, the said plaintiff hath no such interest in the subject-matter of complaint alleged against the above-

---

¶ 1. Waiver of right as to district in which suit may be brought, see note to Bank v. Houchens, 52 C. C. A. 192.

named defendants as entitles the said plaintiff to any relief sought against them or any of them.

"Third. It appears from the allegations of said bill that the United States circuit court hath no jurisdiction of this cause, inasmuch as it appears that the Fire Creek Coal & Coke Company, Alaska Coal & Coke Company, Beechwood Coal & Coke Company, and all the other coal companies mentioned in said bill, and proceeded against as defendants therein, have interests in the subject-matter of said bill which will properly align them on the side of the plaintiff therein instead of with the defendants named in said bill, and the said coal companies must be aligned on the side of their real and true interests in determining the question of jurisdiction; and it appearing from said bill that said coal companies should be arranged on the side of the plaintiff in this case, and that each and all of them mentioned as defendants to the said bill are corporations created and organized under the laws of the state of West Virginia, and as such are citizens of the state of West Virginia, and that nearly all of the other defendants to the said bill are residents and citizens of the state of West Virginia, there is no such diverse citizenship shown in this case as to give jurisdiction to the said court, either for the purpose of maintaining the said bill or issuing an injunction thereon.

"Fourth. Because the court is further without jurisdiction, and especially for the issuance of an injunction herein, because, as appears from the allegations of said bill and the present arrangement of the parties therein, the plaintiff is a citizen of the state of New Jersey, and the Fire Creek Coal & Coke Company, and all of the other coal companies mentioned as defendants in said bill, are corporations created and organized under the laws of the state of West Virginia; and the defendant the Chesapeake and Ohio Railway Company is a corporation created under and by virtue of the laws of the states of Virginia and West Virginia, and is therefore a citizen of each of said states; that the defendant W. P. Rend is a citizen and resident of the state of Illinois; that the defendants G. W. Purcell and W. B. Wilson are citizens and residents of the state of Indiana; and that the defendant John Mitchell is a citizen and resident of the state of Pennsylvania; and all of the other natural persons designated as defendants on the face of said bill are citizens and residents of the state of West Virginia; that by the amendment made to the plaintiff's bill on the 13th day of August, 1902, by an order entered in Chancery Order Book No. 1, page 172, the following named persons were added as defendants to said bill by way of an amendment thereto: Joe Prenosel, T. B. Delong, Sam Washington, J. W. Ewing, James McIver, R. L. Bess, James Sizemore, Ed. Scott, H. F. Hawks, C. Totten, Joe Smith, Robert Mason, Burt Campbell, Vint Miller, Hillie Hutchinson, John Uposky, George Holcomb, Henry Mosby, Mat Ratliff, James Hager, M. M. Mason, O. F. Stewart, Mike Fleming, Bob Richards, Dave Davis, Jack Davis, Thos. Campbell, Thos. Hughes, Will Robinson, Arthur Towmaw, W. R. Smith, W. H. Thompson, Charles Kauff, John Wyman, Henry Wessell, Bob Morrison, J. F. Kirk, Duncan Kennedy, and W. H. Martin; and that it does not appear from the bill, filings, and papers in the cause of what state the said last-named defendants, added to said bill by way of amendment to said bill as aforesaid, are citizens, whether of the state of New Jersey or some other state; that on the 2d day of September, 1902, the said bill was further amended by an order entered of record in Chancery Order Book No. 1, page 174, making the following named persons defendants to said bill: The St. Clair Company, a corporation, L. H. Suddith, L. M. Hepenstall, George W. Riser, Eli Elswick, John Ervin, Windy Hannah, James Massey, John Phillips, Andy Forbs, Ed Caldwell, and Laurel Coal & Coke Company; that it does not appear from the said bill, filings, and other papers in said cause of what state the said last-named persons are citizens; and that on August 2, 1902, the said bill was further amended by order entered in said cause on said 2d day of August, 1902, in Chancery Order Book No. 1, page 169, by making the following named persons also defendants to said bill: The Stevens Coal Company, George Bryant, Morris McGrath, W. L. Williams, Sr., and O. E. Williams; that it does not appear from the said bill, filings, and orders in said cause of what state or states the said last-named persons are citizens.

"Fifth. Because it clearly appears upon the face of the said bill that the

said plaintiff is in fact not the real party in interest, but that the said Fire Creek Coal and Coke Company, and all the other coal companies, corporations, mentioned and proceeded against as defendants in the said bill conjointly with these demurrants, are the real and substantial parties in interest with reference to the matters and things alleged in said bill of complaint, and on whose behalf this suit was in fact instituted by an agent of the said coal and coke companies, each of said coal companies seeking to avoid a separate and distinct suit, if any it hath, on its own behalf and under its own name.

"Sixth. Because there is a misjoinder of parties defendant in said bill of complaint, in that the said Fire Creek Coal and Coke Company, and each of the other coal companies mentioned and proceeded against as defendants in said bill, are improperly joined with the above-named defendants to said bill.

"Seventh. Because the allegations of the said bill upon which the said plaintiff predicates its ground of relief are too uncertain, vague, and indefinite to authorize a court of equity to grant any relief thereon.

"Eighth. Because, disregarding and eliminating the insufficient allegations of said bill by reason of their vagueness, uncertainty, and indefiniteness, there is no such showing on the face of said bill as authorizes the exercise of the jurisdiction of a court of equity and the issuance or maintenance of an injunction in this case."

There is one matter not mentioned in the argument by counsel, and not incorporated in either of the written demurrers filed to this bill, which, nevertheless, appears upon the face of the bill, and must therefore be considered by the court in passing upon these demurrers.

The plaintiff corporation is alleged to be a citizen and resident of the state of New Jersey. The following demurring defendants are alleged in the bill to be citizens and residents of states other than West Virginia, as follows: G. W. Purcell, of the state of Indiana; W. B. Wilson, of the state of Indiana; and John Mitchell, of the state of Pennsylvania.

The jurisdictional act of 1887 [U. S. Comp. St. 1901, p. 508] provides, among other things, that in a suit in a United States court, where the only ground of jurisdiction is that the suit is between citizens of different states, suit shall be brought in the district of the residence of either the plaintiff or the defendant. A long line of decisions, including numerous decisions of the supreme court of the United States, hold that this requirement is jurisdictional, and that jurisdiction can only be acquired by some direct waiver by defendant in submitting himself to the jurisdiction of the court. See Bank v. Slocomb, 14 Pet. 60, 10 L. Ed. 354; Thayer v. Wales, 5 Fish. Pat. Cas. 448, Fed. Cas. No. 13,872; Noonan v. Railroad Co. (C. C.) 68 Fed. 1.

Here the defendants, through their counsel, have demurred to the bill, and, following the decisions above referred to, the separate demurrer of G. W. Purcell must be sustained, and the demurrer must also be sustained as to defendants John Mitchell and W. B. Wilson.

In the argument the first, second, and fifth grounds of demurrer were considered together, as were also the seventh and eighth points, and in this opinion they may, I think, be grouped as they were in the argument.

The first, second, and fifth grounds substantially allege that plaintiff shows no equity in its bill; that it is not the substantial party in interest, but that the coal company defendants are the real parties

in interest; and that this suit is brought by their agent, on their behalf, to avoid the bringing of separate suits by these coal company defendants. If this is true, and appears upon the face of the bill, the bill should be dismissed on demurrer. But I cannot see that this does appear on the face of the bill. It may be true, perhaps is, that the various coal company defendants are not averse to the action sought to be taken by the plaintiff; but if the plaintiff company has such an interest in the subject-matter in controversy that it will support an action, independently of any interest of the coal companies, and is by this proceeding seeking relief in equity which cannot be adequately afforded at law, either from the insolvency of defendants, their multitude, or for any other of the grounds that authorize a resort to a court of equity, then the mere fact that the defendant companies are not averse to the sustaining of such rights on the part of the plaintiff cannot make them the real parties in interest in this proceeding, or take away the right of plaintiff to pursue its only effective remedy.

I fully realize the importance of proceeding in this case in accordance with correct principles, and, in order that we may have the controversy presented by the bill clearly before us, let us see very briefly what are its substantial averments of importance. After making the ordinary jurisdictional averments, it proceeds to state that plaintiff (and its predecessor) has built up a coal-selling business amounting in value to $50,000 a year; that the plaintiff is and has been practically the exclusive selling agent in eastern and foreign markets for the sale of the coal for all of the defendant companies, and has contracts with all of them for the sale of such coal at a price fixed by the producing companies, plaintiff to receive 10 cents per ton out of such selling price; that it has sold more than 2,000,000 tons of coal and several hundred thousand tons of coke for delivery during the current year; that complainant takes charge of the coal at the mines, and must provide for the water transportation of such coal as is sold for delivery at ports beyond Newport News, and has under contract a number of vessels to receive the product of the mines; that since June 7, 1902, a strike has existed at the mines of the companies, the individual defendants being strikers and members of the organization conducting and controlling the strike; that since said date plaintiff has received but little coal and no coke from the defendant companies; that the companies are willing to ship coal to it, and there are a large number of persons who are willing to work for said companies, but who have been and are intimidated from doing so by the acts and conduct of the individual defendants; that said defendants have openly said that men who will work during the strike will be black-listed, and will be unable to get work anywhere in the United States, etc., and have thus prevented them from continuing to work; that the contracts with the coal companies contain a clause exonerating them from damage for failing to furnish coal upon their contracts where such failure is caused by a strike of the employés, etc. The bill, upon its face, in my judgment, shows that the defendant companies are being prevented, wholly or partially, from fulfilling their contracts with plaintiff, by acts and

conduct upon the part of the individual defendants and their aiders and abettors, which is unlawful and wrong.

Does this present such a case as would support an action at law by plaintiff against the individual defendants for causing a failure on the part of the mining companies to deliver coal under their contracts? The defendants' liability for any tort is held to extend to all those who suffer injury therefrom as a natural result of the act. The case of Griggs v. Fleckenstein, 14 Minn. 81 (Gil. 62), 100 Am. Dec. 199, furnishes an example of the extent to which this principle is carried. In that case the defendant negligently left his horses on the street unsecured. They ran off. People in the street hallooed and raised their arms before them, and caused them to swerve from their course and to collide with another team, properly tied. This second team ran off and injured the plaintiff's horse. The defendant was held liable. The immediate cause of the injury was the collision of the second team with plaintiff's horse, but the earlier wrongful act of the defendant in leaving his team negligently unguarded is regarded as the primary and efficient cause, acting through these subsequent events.

Nor is this principle of this line of cases new. The leading case is the familiar "squib" case of Scott v. Shepherd, 2 W. Bl. 892, also reported in 1 Sm. Lead, Cas., page 737 of the American Edition, where it was held that trespass·and assault would lie for originally throwing a squib, which, after having been thrown about in self-defense by two other persons in a market house, at last was thrown against the plaintiff and put out his eye. Nares, J., said: "That the natural and probable consequence of the act done was injury to somebody, and therefore the act was illegal at common law."

Upon principle can it make any difference as to my right of action if a man, by an illegal act, injures me or injures my property? Have I not rights as against him in either case? And is a case not too remote to give me a right of action as to my person too remote to protect me as to my property? The Minnesota case would seem to indicate that it is not, and there is a much older case still more in point. In the case of Tarleton v. McGawley, Peake, N. P. (Ed. 1795) p. 270, the action was special on the case. The declaration averred that plaintiffs owned a certain ship named the Tarleton, which at the time of committing the grievance was lying at Calabar, on the coast of Africa, having been fitted out and sent thither for slaves and other goods; that the plaintiffs had also sent a smaller vessel, called the Bannister, similarly loaded for trading with the natives, to another part of the coast, called Cameroon, for the purpose of trading with the natives there; that while the Bannister was lying off Cameroon a canoe, with some natives on board, came to the vessel for the purpose of establishing a trade, and went back to the shore, and that the defendant, knowing this, but contriving and maliciously intending to hinder and deter the natives from trading with the master of the Bannister for the benefit of the plaintiffs, with force and arms fired from a certain ship called the Othello a certain cannon at the canoe, killing one of the natives, whereby the natives of the coast were deterred and hindered from trading with

the Bannister, and the plaintiffs lost their trade. The court held the declaration to state a cause of action, and Lord Kenyon said:

"The injury complained of is that by the improper conduct of the defendant the natives were prevented from trading with the plaintiffs. The whole of the case is stated on the record, and if the parties desire it the opinion of the court may hereafter be taken whether it will support an action. I am of opinion it will."

These cases, particularly the last one, seem very much in point. In that case no contract rights existed on the part of the owners of the Bannister. There is no allegation that they had any trade agreements with the natives or their chiefs, but yet it was held that the unlawful act of the owners or crew of the Othello, inasmuch as it prevented the natives from trading with plaintiffs, was a good foundation for a special action for damages.

Can it be doubted that, if there had been a threatened repetition of the unlawful interference, and the defendants were alleged to be insolvent, equity could have intervened by way of injunction to prevent further injury?

It is urged in argument that the plaintiff here is but the agent of the defendant coal companies, and the connection between it and them is too slight to support a suit brought by it. In the first place, the so-called agency, as shown by the bill, is, if an agency at all, coupled with an interest in the subject of the contract; that is, the coal of defendant companies. The plaintiff avers that it has made contracts for the sale of upwards of 2,000,000 tons of such coal for delivery during the current year, and, inasmuch as it is personally, responsible to the coal companies for the net price of the coal as soon as delivered to it in the cars, it has practically bought this coal for delivery upon its sale contracts. Its business, which it has built up in the course of years, is its property. It has contractual trade relations with these defendant companies, and I can see no reason why it would not have a right of action against any one who by a wrongful act should render these companies incapable of carrying out their contracts with it.

In Story, Ag. § 394, it is said:

"Where the agent has made a contract, in the subject-matter of which he has a special interest or property, whether he professed at the time to be acting for himself or not, the agent acquired personal rights, and may maintain an action upon the contract, in his own name, without any distinction, whether his principal is or is not entitled also to similar rights and remedies on the same contract."

If, then, the agent has obtained a special interest or property in the subject of the contract, has he not a right of action against a third party, whose wrongful act prevents the delivery by his principal of the subject of the contract? And if he has, and such remedy is ineffective, for any of the reasons warranting the interposition of equity in ordinary cases, may not he appeal to a court of equity for protection of this interest? Suppose the individual defendants had wantonly and maliciously induced the defendant companies to violate their contract with the plaintiff; would it not have a right of action against them? Undoubtedly. See West Virginia Transp. Co. v. Standard Oil Co. (W. Va.) 40 S. E. 591, 56 L. R. A. 804. And

if such right of action was ineffective, for any of the reasons authorizing a resort to equity, might it not ask an injunction to prevent the continuance of such interference? I think so. See Railway Co. v. McConnell (C. C.) 82 Fed. 65, a case in which a bill was filed by the railway company to restrain the defendants from carrying on the business of dealing in Tennessee Centennial Exposition special round-trip railway tickets, issued at reduced rates. The tickets were receivable for return transportation over different roads from those issuing them, and were not transferable. The defendants were ticket brokers or scalpers, engaged at Nashville in buying such tickets from holders, and reselling the return portions to others for use in violation of the contract. It was held: (1) That the railroad companies were entitled to injunctions. (2) That in a suit for an injunction the amount in dispute, for jurisdictional purposes, is not determined by the amount which the complainant might recover from defendant in an action at law for the acts complained of, but by the value of the right to be protected or the extent of the injury to be prevented by the injunction. (3) That in the use of the writ of injunction courts exercise discretion, and it is not a fatal objection that the use of the writ for a particular purpose for which it is sought is novel. (4) The right to carry on a lawful business without obstruction is a proper right, which should be protected by injunction when the ordinary remedies are inadequate. (5) The suit was not upon the contracts embodied in the tickets, but the subject-matter was the illegal use made of the tickets by defendants, not parties to the contract, to the injury of complainant, and therefore any remedy provided by the contract itself for its violation was not a bar to the relief sought. (6) One who wrongfully interferes in a contract between others, and induces one of the parties to break it, is liable to the party injured, and his continued interference may be ground for an injunction where the injury resulting will be irreparable. (7) It is not an objection to the jurisdiction of a court of equity to grant injunctions to protect property rights that the act sought to be enjoined may also be a violation of the criminal law. Attention is invited to the well-considered opinion of Judge Clark in this case.

It having been, as I think, conclusively shown that injunction would lie, in a proper case, if defendants had unlawfully induced the defendant companies to violate their contract with plaintiff, it only remains, under this branch of the case, to consider whether there is any difference between such a case and a case where the unlawful acts charged against defendants render it impossible of performance. I see no difference whatever in principle. It makes no difference whether a man is wrongfully and maliciously induced to cease business relations with me or whether he is maliciously and wrongfully prevented from doing so. The effect is the same. The means in either case are wrongful, and in either case the wrongdoer is liable, in so far as the injury is the natural and probable result of the wrongful acts.

While I appreciate the importance of the principle here to be decided, and would be glad to have a decision by a higher and more able court, I must act in the first instance, and I feel constrained to overrule the first, second, and fifth points of the demurrers.

The third point of the demurrers is likewise overruled upon the ground that the bill shows that the plaintiff has an independent interest in the subject-matter of the suit, which would be enforceable against the defendant companies themselves, and the mere fact that the defendant companies may not be averse to the success of plaintiff's suit cannot render their interests at all identical with plaintiff's interests. In fact, plaintiff seeks relief by injunction against defendant companies. (See prayer of the bill.)

I cannot well see how this bill could have been framed without making these coal companies at least formal parties defendant. A contract is alleged to exist with each of them giving plaintiff a right to the coal produced by each. They or any of them might deny the existence of such contract, or that its terms were as set out. But suppose they admit the contract, and simply content themselves with saying: "It is true that the contract exists as is stated in the bill, and that we (the coal companies) are relieved against any failure to furnish coal when such failure is caused by strike. A strike exists, but we could ship coal if it were not for the illegal acts complained of in the bill. This is all true, but we own this property, and this plaintiff has no right to manage it in any way. We prefer to be left to take care of our own interests in our own way." Suppose such an answer were made, would it not demonstrate that the plaintiff here has rights and interests which demand and are entitled to protection?

To my mind the defendant coal companies here are proper, and I believe necessary, parties, but I do not think they are, or could be made, parties plaintiff. This bill is framed to assert and protect its interest. That interest, while growing out of contracts made with the various coal company defendants, is yet separate and distinct from the property and interest of each and every of said defendant companies, and the pendency of this suit could not preclude the bringing of a separate suit for the same purpose by each of these coal company defendants for the purpose of protecting its own property from the illegal acts alleged in this bill against the individual defendants herein. Such suits, if brought, would not be for the protection of the rights and interests sought to be protected by this suit, nor would it be essential to make the plaintiff a party to any one of such suits. It seems to me that this statement is sufficient to show there is nothing in the third point of the demurrer.

Attention is invited to the discussion of the general doctrine of "parties" contained in the opinion of the court in the case of Shields v. Barrow, 17 How. 130, 15 L. Ed. 158. See, also, Horn v. Lockhart, 17 Wall. 570, 21 L. Ed. 657.

With regard to the fourth point of the demurrer, namely, that as to the parties made defendants by the respective orders of August 2, August 13, and September 2, 1902, it does not appear of what states they are citizens, respectively, I would say that, as at the time these orders were entered, no appearance had been entered by any of the defendants, it was no doubt contemplated that these new names should be inserted in the bill at the appropriate place, and I will permit the bill now to be amended by making any proper and necessary aver-

ments as to the citizenship of the defendants made parties by the orders of August 2, August 13, and September 2, 1902, and with leave to defendants to redemur when such averments are made.

The seventh and eighth points of the demurrer are overruled, as I think the allegations of the bill, while very general, are sufficient. The gist of the bill is the averment of a combination among the defendants to prevent the defendant companies from mining and shipping coal, and, in pursuance thereof, of illegal acts, threats, and demonstrations by defendants calculated to intimidate (and having such result) persons desirous of working for such defendant companies from doing so. I think this is made sufficiently clear in a general way in the bill, and, of course, it would not be proper to insert herein the particular facts which may be the basis of these charges, they being properly reserved for the proofs.

An order may go in accordance with this opinion.