FORTNEY et al. v. CARTER et al.

(Circuit Court of Appeals, Fourth Circuit. March 8, 1913.)

No. 1,112.

**1. STIPULATIONS (§ 14*)—EQUITY SUIT—TAKING TESTIMONY.**

Where counsel agree to take testimony by consent, regardless of the equity rule as to time, the court will apply such agreement to all the testimony so taken.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. §§ 24–37; Dec. Dig. § 14;* Depositions, Cent. Dig. § 6.]

**2. COURTS (§ 328*)—FEDERAL COURTS—JURISDICTION—AMOUNT IN CONTROVERSY.**

Where holders of bonds of a corporation sued to restrain strikers from interfering with the operations of the corporation, on the ground that the strikers' acts were operating to decrease the security, the amount in controversy was the value of the bonds held by the complainants, which were being so jeopardized.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 890–896; Dec. Dig. § 328.*

Jurisdiction of Circuit Court as determined by amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459; O. J. Lewis' Mercantile Co. v. Klepner, 100 C. C. A. 288.]

**3. INJUNCTION (§ 114*)—RIGHT TO SUE—BONDHOLDERS—STRIKES.**

Bondholders of a corporation, having an independent personal right to protect their interests in the security, were entitled to sue to restrain strikers from interfering with the operations of the corporation to the injury of the corporation's property mortgaged to secure the bonds, and it was therefore immaterial whether the corporation as such aided them in the prosecution of their suit or not.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 202–220; Dec. Dig. § 114.*]

**4. INJUNCTION (§ 101*)—STRIKES—MISCONDUCT OF STRIKERS.**

Where striking employés of a coal company conspired to prevent the employment of miners by the company, to compel those at work to quit, and to prevent the operation of the mines, and for this purpose insulted the company's employés by opprobrious epithets, fired guns at them, threw stones at their houses, where their wives and children were living, sent threatening letters, and went masked at night, and threatened to kill, etc., and the peace officers of the town were either members of the strikers' organization or in full sympathy with them, the bondholders of the corporation were entitled to an injunction to restrain the continuance of such acts.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 174, 175; Dec. Dig. § 101.*

Restraining boycotts, strikes, and other combinations by employés interfering with commerce or business, see note to Shine v. Fox Bros. Mfg. Co., 86 C. C. A. 313.]

Appeal from the District Court of the United States for the Northern District of West Virginia, at Philippi; Alston G. Dayton, Judge.

Bill by Merville H. Carter and others against Osborne Fortney and others. From a decree perpetuating an injunction, defendants appeal. Affirmed on opinion of Dayton, District Judge, which was as follows:

In the first opinion filed by me in this cause, ruling upon the demurrer, I considered the questions of the bondholders' right, independent of the com-

pany, to ask for and secure an injunction, and held them to be entitled, and that neither the company nor the mortgage trustee were necessary parties. I adhere to these rulings for the reasons stated in that opinion. It seems clear to me that the verified copy of the mortgage, which I have permitted to be filed, clearly shows the existence of the mortgage lien, and that the allegations of the bill that the plaintiffs are holders of bonds of the value of $24,000 under this mortgage is not denied in the answer in such way as to demand affirmative proof; that the value of these bonds, as shown by the evidence of Atkinson, was almost wholly dependent upon the ability of this coal company to operate its mine, whereby revenue could be derived with which to pay interest and principal of these bonds in accord with the provisions of the mortgage contract, and that the other source of revenue, that from the rent of mine houses, was small and immaterial.

[1] I do not think, under the manifest agreement of counsel, whereby the taking of the testimony in this cause was extended over a period far in excess of that fixed by the equity rules, that objection can be made that this deposition of Atkinson was taken too late. Fairness requires, where counsel so agree to take testimony by consent regardless of the equity rule as to time, that the court should apply such consent agreement as relating to all the testimony so taken.

[2] It would seem clear, therefore, that the technical amount in controversy here necessary to confer jurisdiction is the $24,000 of value of these bonds held by plaintiffs, which is being jeopardized by the acts of defendants in preventing the coal company from meeting the payment of interest and principal in accord with the mortgage contract relating thereto. Taking up the several questions discussed in the able and exhaustive brief of counsel filed in support of the motion to dissolve this injunction, I think it is clear (a) that the value of the coal company's property does depend upon its substantially continuous and uninterrupted operation of its coal plant, so far as its ability to comply with its mortgage contract with plaintiffs and its other bondholders is concerned, and that this is shown by the undisputed testimony of Atkinson; (b) that the pleadings and proofs in the case are sufficient to show plaintiffs to be lien creditors of this company; (c) that such pleadings and proofs are ample to show that irreparable injury to plaintiffs was threatened by the acts imputed to defendants; (d) that such acts did prevent the coal company from operating its plant in the usual manner and injunction was necessary; (e) that such acts were sufficient to preclude the coal company from operating its coal plant at a profit; (f) that the pleadings and proofs do show that the acts alleged were committed by the defendants for the purpose of interfering with the operation of the company's mining plant; and (g) that such acts were unlawful, committed by a sufficient number to prove conspiracy, and give equity jurisdiction.

[3] Holding the law to be, as I have held in my former opinion, that these bond lien holders have an independent personal right to protect their interests in the premises, it becomes immaterial whether the company as such has aided them in the prosecution of this suit or not, and no question of collusion can arise. It is undisputed that they have instituted this suit to preserve such right. The bill has been filed on their behalf by an attorney practicing at this bar of the highest character and in the very best standing thereat, and there is absolutely no evidence of or ground for the charge "that the Merchants' Coal Company is using the names of the plaintiffs in said bill as a means of instituting this suit and obtaining said injunction in a federal court upon the alleged ground of diverse citizenship, when in truth and in fact the plaintiffs themselves did not seek to institute said suit and obtain said injunction" as set forth in the motion made of record to dissolve and dismiss. It would be clearly incumbent upon defendants alleging this to supply the evidence thereof.

[4] I have carefully read all of the more than 1,600 typewritten pages of evidence filed in this cause, and I find it overwhelmingly sustains the plaintiffs' contention that these defendants, with others, conspired to prevent the employment of miners by the coal company, to compel those at work to quit and to prevent the operation of the mines. To accomplish this they and their co-conspirators threatened, menaced, insulted, and intimidated the

company's employés; called them "scabs," "black legs," "black sheep," "yellow dogs," and other even viler and more opprobrious epithets; fired at them with guns; fired guns and threw stones into their houses where their wives and children were; exploded dynamite or other explosive on the porch of the assistant mine foreman's house; stoned and otherwise assaulted them; sent threatening letters, .went masked at night, threatened to kill, and gathered at the trains to prevent men from going to work for the company; exposed banners, warning men not to come there for work, and paraded in large numbers the streets surrounding the company's property, .yelling, hooting, and calling the men working for the company insulting names, and applying to them opprobrious epithets. The officers of the town were either members of their organization, or in full sympathy with them, so that in some cases men were not only assaulted, but, after being so, were arrested and fined by these officers. In short, this record discloses a state of affairs existing in this town by reason of the acts and conduct of these strikers and their sympathizers that was a disgrace to the town, county, and state. Their own testimony shows almost throughout that they had no true conception of their moral and legal obligations. Because they were not willing to work at the wages this company was willing to give, they turned themselves into a mob of idle and largely drunken lawbreakers, determined to prevent other and better men from working. They took this course under the guise of a local union of the United Mine Workers of America, but it is hardly conceivable that they did so with the sanction and approval of the national officers of that organization.

The motion to dissolve and dismiss will be overruled, and this injunction will be perpetuated, with costs.

See, also (C. C.) 170 Fed. 463; (C. C.) 172 Fed. 722.

Charles E. Hogg, of Morgantown, W. Va., for appellants.

P. J. Crogan, of Kingwood, W. Va., for appellees.

Before PRITCHARD, Circuit Judge, and BOYD and SMITH, District Judges.

PER CURIAM. We have carefully considered the questions involved in this appeal, and find ourselves forced to the conclusion that the assignments of error are without merit. The opinions filed by the learned trial judge properly applied the facts as found in the record to the law applicable thereto, and directed a decree with which we find no fault.

It follows that the decree complained of will be affirmed.