## DAVIS et al. v. HENRY.

(Circuit Court of Appeals, Sixth Circuit. August 2, 1920.)

No. 3390.

1. **Courts ⬳316—Bill dismissed where omitted necessary party, if aligned as plaintiff, would destroy jurisdiction based on adverse citizenship.**

   A salesman for a corporation, receiving part payment in commissions, has not sufficient interest to maintain suit to enjoin striking employés of the corporation from interfering with other employés, and a bill by such salesman, filed in the federal court, will be dismissed, the corporation and strikers being citizens of the same state, and the court having jurisdiction only by reason of the adversity of citizenship between the salesman and the strikers, for the corporation is a necessary party plaintiff, and, if aligned as plaintiff, diversity of citizenship would be destroyed.

2. **Parties ⬳1—Where controversy could not be determined without him, party is "indispensable party."**

   The test of indispensability of party is not whether the decree is bound to injuriously affect the rights of the absent party. It is enough that such absence may leave the controversy in such a situation that the final determination may be inconsistent with equity and good conscience.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Indispensable Party.]

3. **Injunction ⬳114(2)—Employer held indispensable party to suit to enjoin strikers.**

   Where the object of a strike was to compel employer to maintain an open shop, the employer was an indispensable party to the suit to enjoin acts of interference by the strike leaders, some of which might be lawful, and a suit for that purpose cannot be maintained by a mere salesman of the employer.

4. **Injunction ⬳157—Restraining order should be special.**

   A restraining order against strikers should be in reasonable detail, and a general order against interference in any way or manner and from picketing the highways or means of ingress, etc., acts which do not necessarily constitute unlawful influence, is too broad.

Appeal from the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Bill by Harry E. Henry against John Davis and others. From an order awarding a temporary injunction, defendants appeal. Reversed and remanded, with directions to dismiss the bill.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Ernest Woodward, of Louisville, Ky. (F. J. Pentecost, of Henderson, Ky., and Moorman & Woodward, of Louisville, Ky., on the brief), for appellants.

Edward P. Humphrey, of Louisville, Ky. (John C. Worsham, of Henderson, Ky., and W. W. Crawford and Humphrey, Crawford & Middleton, all of Louisville, Ky., on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

PER CURIAM. This is an appeal from an order awarding temporary injunction in a suit brought by appellee, as sole plaintiff, against certain former employés of the Delker Bros. Buggy Company, of Henderson, Ky. (as well as one other individual defendant and a local labor union), restraining certain activities on the part of defendants in the course of a strike directed against the buggy company and the operation of its factory. The bill and affidavits make out a case of violence toward and intimidation of the buggy company's employés, which, under the decisions of the Supreme Court and of this court, amply justifies injunctive relief, provided plaintiff has such an interest as entitles him to maintain this suit without joining the buggy company. Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 229, 38 Sup. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461; Sona v. Aluminum Castings Co. (C. C. A. 6) 214 Fed. 936, 131 C. C. A. 232; Tosh v. West Ky. Coal Co. (C. C. A. 6) 252 Fed. 44, 47, 164 C. C. A. 156.

The asserted jurisdiction is based solely on diverse citizenship of the parties; the plaintiff being a citizen of Tennessee, and all the defendants being citizens of Kentucky. The buggy company is also a citizen of Kentucky, and, if made a party and aligned as a plaintiff, diversity of citizenship would disappear. It is rightly conceded that, if the buggy company is an indispensable party, it must be aligned with the plaintiff.[1]

[1] The basis of plaintiff's asserted right to maintain this suit, without making the buggy company a party, is that plaintiff had a subsisting contract with the buggy company whereby he was, for a period of one year from July 1, 1919, "to devote his energies as in the past to the sale of the lines of goods manufactured by the Delker Bros. Buggy Company in the same territory he has been having in the past, for which he is to receive a salary of $7,500, payable in equal monthly payments, based on sales of $190,000 computed on goods shipped," together with an added compensation of 3 per cent. and 2 per cent., respectively, on two certain grades of goods shipped during the year. It appears that when the bill was filed (January 31, 1920) plaintiff had already sold $354,000 of the company's goods, $159,000 of which had already been shipped by the company, that amount only having been yet fully manufactured, the remainder being either in course of manufacture or to be manufactured; that the buggy company's ability to

[1] Dawson v. Columbia Trust Co., 197 U. S. 178, 180, 25 Sup. Ct. 420, 49 L. Ed. 713; Steele v. Culver, 211 U. S. 26, 29, 29 Sup. Ct. 9, 53 L. Ed. 74; Hamer v. N. Y. Railways Co., 244 U. S. 266, 274, 37 Sup. Ct. 511, 61 L. Ed. 1125.

fill all these orders was seriously threatened by defendants' conduct; and that its inability so to do would entail a loss to plaintiff of commissions to a maximum of more than $4,000, and also to a possible scaling of his salary, if less than $190,000 of goods were shipped, in addition to the possibility of plaintiff's making still further sales during the remaining portion of the year.

The buggy company had a direct and predominating interest in putting an end to the strike, and plaintiff could not properly file this bill, unless by virtue of special and peculiar interests and relations; nor even then could the presence of the buggy company be dispensed with, unless, in its absence, the rights of the parties before the court could consistently with equity and good conscience be fully and completely determined, and without injury to the rights of the buggy company or the defendants. In several cases one having a special interest in a corporation or its property has, under the circumstances there existing, been held entitled to maintain suit in the federal courts to restrain the prosecution of a strike against the corporation threatening the destruction of or injury to such special interest, and without aligning the corporation as a plaintiff, where to do so would defeat jurisdiction. Among the more prominent of these cases are Chesapeake & Ohio Coal Agency v. Carroll (C. C.) 119 Fed. 942; Id. (C. C. A. 4) 124 Fed. 305, 61 C. C. A. 49; Ex parte Haggerty (C. C.) 124 Fed. 441; Fortney v. Carter (C. C. A. 4) 203 Fed. 454, 121 C. C. A. 514; Jennings v. United States (C. C. A. 8) 264 Fed. 399.

In the Chesapeake & Ohio Case, supra, an injunction suit was brought by a selling corporation, which had contracts with mining companies, by which the selling corporation was to take all the mining companies' product at the mines and to pay for the same, whether sold by plaintiff or not, to furnish transportation, and to sell the coal at prices fixed by the companies, receiving a stipulated sum per ton for its services. In reliance upon these contracts plaintiff had contracted for the sale of large quantities of coal and coke, which could only be supplied by the mining companies. It also appeared that these companies would not necessarily be injured (indeed, they might be benefited [2]) by the strike (which relieved them from liability upon their contracts with plaintiff), while plaintiff's business would be ruined thereby. They were also held to have no interest in plaintiff's rights under its contracts of sale. These mining companies were made defendants, were alleged to be irresponsible, and injunction was asked to restrain them from allowing the individual defendants or others to do acts tending to interfere with the coal companies' employés. The decision involved only the sufficiency of the bill as against demurrer. The opinion of the Circuit Court of Appeals not only commented upon this prayer, but distinctly recognized the possibility of actual fault on the part of the mining companies. The bill thus asserted, not only a right with which the mining companies were not concerned, but an adversary relation on their part.

[2] Iron Molders' Union v. Niles-Bement-Pond Co., infra, 258 Fed. at page 412, 169 C. C. A. 424.

In Fortney v. Carter, supra, the bill was filed by the mortgage bondholders of a corporation, who were held to have "an independent personal right to protect their interests in the premises." It was held that neither the mining company nor the mortgage trustee were necessary parties. The published opinion of the District Court, on which the decision below was affirmed, does not show the reasons for that conclusion (evidently stated in a former unpublished opinion), except by the statement that it is "immaterial whether the [mining] company as such has aided them in the prosecution of this suit or not, and no question of collusion can arise. It is undisputed that they have instituted this suit to preserve such right."

In Ex parte Haggerty, supra, a bill to restrain unlawful action by strikers had been filed by the trustee of mortgage bonds secured upon all the property of the mining company against whom the strike was directed. The mortgagor was not a party. Jurisdiction was involved as affecting liability for violation of an injunction issued in that suit. Judge Goff held that upon the issues in that case, and as no relief was prayed against the mortgagor, full and complete justice could be done between the parties before the court without the presence of the mortgagor mining company, and that jurisdiction thus existed.

Jennings v. United States, supra, involved a review of a judgment of conviction of contempt in violating an injunction in a suit brought by a mortgage trustee and a mortgage bondholder. The mortgagor traction company was made a party defendant, and the bill prayed that the traction company be restrained from ceasing to operate its cars, and that it be compelled to so operate. The traction company was held "not an indispensable party to the mortgagee's suit in equity to enjoin the wrongdoers, the defendant Jennings and his associates, from irreparably injuring or destroying the plaintiff's security and property."

Assuming, for the purposes of this opinion, that the cases we have been considering were properly decided (and we know of no others more favorable to plaintiff), yet in our opinion these cases, taken together, fall far short of asserting a broad rule that the corporation against which a strike is directed is not an indispensable party to any injunction suit by a third party who has a pecuniary interest in putting an end to the strike. It seems clear that the instant case differs radically in more than one of its salient features from each of the cases referred to. In our opinion plaintiff has no interest in the subject-matter of the strike independent of or separate from the interests of the buggy company. He was merely a salesman for or (as the District Judge characterized him) an employé of the buggy company. True, his compensation was by way of both salary and commission; but that did not make him the less a mere salesman and agent. The goods he sold were those of the buggy company, and sold as such. The purchasers presumably made their payments directly to the buggy company. It is plain that the plaintiff is injured only as the buggy company is injured, and equally directly.

If plaintiff has an interest entitling him to maintain this suit without the presence of the buggy company, where shall the line be drawn?

Plaintiff's interest in the continuation of the buggy company's business without interruption was no greater or more direct than that of the ordinary superintendent or manager of a manufacturing plant, employed for the year upon a salary plus commission, or even upon a salary without commission, in a case where the stoppage of the business would stop or suspend the salary. In a less degree, although equally certainly, every employé for a fixed time, even on salary alone, has or may have a personal and financial interest in the continuance of the business. In our opinion, those sustaining such relation have not an interest so independent of and separate from that of the corporation as to enable the maintenance of a suit of this character in the absence of the employer, unless the latter is unwilling or unable to act. But not only does the bill fail to show any lack of inclination on the part of the buggy company to fill plaintiff's orders, or to resist and end the strike; it, on the contrary, expressly alleges that the company has attempted to manufacture the goods sold by the plaintiff, and that it is doing all in its power to put down the strike. It does not appear that plaintiff is better able than the buggy company to effectively prosecute this suit, unless as he may be able to invoke a preferred jurisdiction in the federal courts.

Taking into consideration plaintiff's relations to the buggy company and the contents of the bill, the inference seems inevitable that the instituting of suit by plaintiff, without joining the buggy company, is for the sole purpose of giving jurisdiction to the courts of the United States.

[2, 3] Iron Molders' Union v. Niles-Bement-Pond Co., 258 Fed. 408, 169 C. C. A. 424, involved a situation similar in many of its features to the instant case, although differing therefrom in the fact that there the plaintiff controlled, as a subsidiary, the defendant who we held should be aligned as a plaintiff. In spite of this difference, we think the case before us fairly falls within the principles applied in the Iron Molders' Union Case. Moreover, in none of the cases to which we have referred, and except as stated in the margin,[3] was any attempt made, so far as appears from the published reports, to determine any existing controversy between the corporation and its employés, or to determine conditions of employment. The relief asked was against violence, coercion, intimidation, or conduct apparently thought, whether rightly or not, to be unlawful, without reference to any relations between the employer and the employés. In the instant case, however, the bill is not confined to complaint of acts of violence or unlawful conduct, irrespective of relations between employer and employés, and efforts to protect the buggy company's property therefrom, but it goes materially further. The bill states, among other things, that the object of the strike is to compel the buggy company to maintain a "closed shop," which "the said * * * buggy company

---

[3] In Jennings v. United States, supra, the bill set up a contract between the corporation and a local union, but only the question of contempt in violating the injunction was involved, the defendant was a party to the bill, and did not appeal from the order for injunction, and it was held that the allegations of the bill otherwise were sufficient to establish the right thereto.

has refused to do, contending that it has a right to employ such proper persons as it pleases, without regard to whether they belong to a labor union or not." Further, the bill asked injunction, not only against violence and intimidation, but against "coercing in any manner employés of the * * * buggy company who are not affiliated with * * * local union No. 20 into joining the said local union or labor organization, * * * and from attempting in any manner to coerce or force the Delker Bros. Buggy Company into unionizing its plant and from preventing it from keeping what is known as open shop."

True, the buggy company was entitled to exercise its own judgment whether or not it should unionize its plant; but, on the other hand, its employés had an equal right by lawful means to accomplish the unionizing of the plant, and in a very proper sense the settlement of the question of open shop or closed shop relates to conditions of employment, which should not be decided without the presence of the buggy company, and with which question plaintiff is not concerned. The test of indispensability is not whether the decree is bound to injuriously affect the rights of the absent party; it is enough that such absence may "leave the controversy in such a situation that the final determination may be inconsistent with equity and good conscience." Rogers v. Penobscott Co. (C. C. A. 8) 154 Fed. 606, 83 C. C. A. 380. So far as we are advised, no court has yet gone so far as to hold the corporation against whom the strike is directed not an indispensable party under circumstances such as exist here.

But whether or not the buggy company should be held an indispensable party, if plaintiff had a sufficient special and independent interest in maintaining the bill for injunction, the considerations just referred to emphasize the lack of such independent right of action and the mischiefs possible to result from its recognition.

[4] Apart from the question of plaintiff's right to maintain this bill, the order appealed from went too far in enjoining against "interfering in any way or in any manner, directly or indirectly, with the plaintiff or the Delker Bros. Buggy Company or the employés of the Delker Bros. Buggy Company, * * * and from picketing highways or means of ingress and egress to and from said plant of said buggy company"—acts which do not necessarily constitute an unlawful interference. King v. Manufacturing Co., 266 Fed. 257, decided by this court June 7, 1920.

In our opinion, plaintiff had no authority to maintain the suit, at least without the presence of the buggy company, and for this reason the order appealed from must be reversed, and the record remanded to the District Court, with directions to dismiss the bill.