THE PEOPLE v. JOSEPH G. McCAFFREY.

*Perjury—Bill for divorce—Jurisdiction.*

75  115
79  339

75  115
90  381

75  115
110  437

75  115
123  425

1. Perjury is assignable upon an oath taken to a bill for divorce.
2. The residence of one of the parties to a bill for divorce in the county where the suit is brought is essential to granting the relief sought, but the omission of such averment from the bill may be cured by amendment.
3. Where a bill for divorce contained sufficient allegations to give the court jurisdiction and to warrant the relief sought, if true, the fact that, upon trial of the complainant for perjury in swearing to said bill, it appeared that neither party had resided in this State for the *statutory year*, will not bar a conviction.

Error to Macomb. (Canfield, J.) Argued April 24, 1889. Decided June 7, 1889.

Respondent was convicted of perjury. Conviction affirmed. The facts are stated in the opinion.

*Edward McNamara* (*Charles Flowers*, of counsel), for respondent.

*J. G. Tucker*, prosecuting attorney, for the People.

LONG, J. On June 12, 1888, the defendant filed a bill for divorce against his wife, Gertrude McCaffrey, in the circuit court for Macomb county, in chancery.

The bill alleged their marriage as having taken place at Ogdensburg, St. Lawrence county, New York, on May 10, 1874, and that they had lived and cohabited together as husband and wife up to December 1, 1885; that he has resided in this State since said marriage continually for a period of two years and upwards, immediately preceding the time of exhibiting his bill; that there are no children as the issue of the marriage; that the defendant, disregarding her marriage

vow, deserted him in the month of February, 1886; and that previous to her desertion she constantly was in the habit of practicing upon him extreme cruelty.

The bill then sets out with much particularity the various acts of extreme cruelty claimed to have been practiced upon him by the defendant, and alleges that the acts done, and cause of divorce charged in the bill for which divorce is sought, were committed without the consent, connivance, privity, or procurement of the complainant, and that the bil is not founded on, or exhibited in consequence of, any collusion, agreement, etc.

The bill contains the usual prayer for answer, relief, and process.

The bill was signed by the defendant, Joseph G. McCaffrey, and indorsed by Francis B. Owen, his solicitor.

This bill was sworn to by the defendant in this case, the notary public making and annexing to the bill the following jurat:

"STATE OF MICHIGAN, ⎫ ss.
  County of Macomb,  ⎭

"On this twelfth day of June, A. D. 1888, before me personally came the above named Joseph G. McCaffrey, and made oath that he has heard read the foregoing bill of complaint by him subscribed, and knows the contents thereof, and that the same is true of his own knowledge, except as to the matters which are therein stated to be on his information or belief, and as to those matters he believes it to be true.

" And he does swear that there is no collusion, understanding, or agreement whatever between himself and the said defendant herein in relation to this application for divorce.
                    "CHARLES A. FITCH,
                        "Notary Public, Macomb Co., Mich."

This bill so verified was filed in the office of the register of said court on the twelfth day of June, 1888.

The defendant was informed against in the circuit court for Macomb county for perjury in falsely swearing to this bill of complaint.

The allegations in the information are, after setting out the bill of complaint and its verification, that the defendant was not intermarried with Gertrude Carper, as alleged in the bill, at Ogdensburg, St. Lawrence county, New York, on or about May 10, 1874, but, on the contrary, was married to her on July 30, 1887, at Chicago, in the state of Illinois, and that they did not live and cohabit together as husband and wife from the tenth day of May, 1874, until December 1, 1885, and that they neither lived nor cohabited together as husband and wife at any time or place prior to July 30, 1887; and that at time he took his corporal oath on June 12, 1888, he had not resided in this State, since said marriage with the defendant named in said bill, continually for a period of two years and upwards immediately preceding the time of exhibiting said bill, and neither had he resided in this State one year immediately preceding the time of exhibiting said bill of complaint; that the said Gertrude McCaffrey did not, disregarding the solemnity of her marriage vow, desert her husband in the month of February, 1886, neither had she any husband at that time; and that Gertrude McCaffrey was not in the habit of practicing extreme cruelty upon complainant mentioned in the bill.

The information then negatives each and every act of extreme cruelty charged in the bill, and concludes as follows:

"And whereas, in truth and in fact, the said bill of complaint that the said Joseph G. McCaffrey had heard read, and by him subscribed, and knew the contents thereof, was not then and there 'true of his own knowledge,' except as to the matters which were then and there stated to be on his information or belief, and as to those matters stated to be on his information or belief, he did not then and there believe it to be true.

"And so the prosecuting attorney aforesaid says and gives the said court to understand and be informed that the said Joseph G. McCaffrey, on the twelfth day of June, A. D. 1888, at the city of Mt. Clemens aforesaid, in the county of Macomb

aforesaid, before the said Charles A. Fitch, a notary public as aforesaid (he, the said Charles A. Fitch, notary public aforesaid then and there having such power and authority as aforesaid), by his own most wicked and corrupt mind, in manner and form aforesaid, willfully and corruptly did commit willful and corrupt perjury, contrary to the form of the statute," etc.

The defendant was convicted in said circuit court before a jury under this information, and sentenced to imprisonment for the term of five years in the State prison at Jackson, and brings the case into this Court by writ of error.

It appears that after the bill was filed the defendant went before a circuit court commissioner of Macomb county, and made an affidavit of non-residence, in which he made oath that his wife was a resident of Springfield, in the state of Ohio, and not of Michigan, and upon this affidavit procured an order for her appearance from the commissioner, which defendant caused to be published in the Mt. Clemens Monitor, a newspaper printed and published in said county.

After the arrangement had been made to have this order published, the defendant and his solicitor in the divorce case went to Detroit, and on July 19, 1888, both returned to Mt. Clemens, accompanied by one Jennie L. Judson, whom McCaffrey had procured to act as a witness in his divorce proceedings.

The parties went before a justice of the peace at Mt. Clemens, where two affidavits were prepared, one sworn to by McCaffrey, and the other by Jennie L. Judson.

In this affidavit Jennie L. Judson testified that she had known the complainant since the year 1874, and was acquainted with Gertrude McCaffrey, his wife, up to the time of her desertion from Joseph G. McCaffrey, which occurred in February, 1886.

McCaffrey testified in his affidavit that he married Gertrude Carper in the year 1874, and lived with her until February, 1886, from which time said Gertrude deserted from

his bed and board; that he had been a resident of Michigan for five years; and that he seeks a divorce from said Gertrude according to the prayer of his bill filed in the office of the county clerk of Macomb county, notice of said cause having been published in the Mt. Clemens Monitor the legal length of time, etc.

These affidavits were made and sworn to before the justice, Mr. Salisbury, on July 19, 1888, and were called by the parties the "proofs in the case," the justice appearing for the defendant.

Mr. Salisbury then wanted something to show that he had authority to appear for the defendant in the divorce case. McCaffrey thereupon, after returning to Detroit, took to Mrs. Judson a draft of a letter to Salisbury, prepared by himself, which purported to give Salisbury authority to act for the defendant, and which he requested Mrs. Judson to copy, so that it might appear in a lady's handwriting. This Mrs. Judson refused to do, but a letter was produced to Salisbury purporting to come from Mrs. McCaffrey in all respects like the one shown to Mrs. Judson by McCaffrey.

These affidavits were all filed in the cause with the register of the court, and Owen, acting as solicitor for the complainant, also filed an affidavit of regularity in the cause.

On the second day of August following the complaint was made against the defendant for perjury.

At the close of the testimony the court charged the jury substantially that perjury was not charged upon these papers, filed outside the bill, and he could not be found guilty of perjury even if these papers were false and untrue; that they were only introduced and received in evidence as a part of the history of the transaction; that perjury is not assigned upon the whole bill, but is assigned upon the following averments:

1. That the defendant and Anna Gertrude Carper were

married at Ogdensburg, St. Lawrence county, New York, on or about May 10, 1874.

2. That they, after being so married, lived and cohabited together as husband and wife from on or about May 10, 1874, until on or about December 1, 1885.

3. That the parties resided in this State after marriage for a period of two years and upwards, immediately preceding the time of exhibiting the bill of complaint.

4. That the defendant, disregarding the solemnity of her marriage vow, in the month of February, 1886, deserted her husband.

The court took from the consideration of the jury all questions relative to the alleged acts of cruel treatment stated in the bill, but charged that the statements in the bill as to the marriage, the time of the marriage, the residence of the parties, their cohabitation, and the desertion were all material allegations in the bill, and, if he swore falsely as to those allegations, he would be guilty of perjury.

The court then further charged the jury as follows:

" It is averred in the information that the oath was administered to the defendant by Mr. Fitch on June 12, and that he wrote or signed this certificate of that verification attached to the bill.   Now, it is necessary that you should be satisfied beyond a reasonable doubt that that oath was so administered in the form in which it is alleged in the information, and which I have substantially repeated to you.

" It is claimed on the part of the prosecution, and they have adduced evidence to show, that it was so administered to him.

" It is claimed on the part of the defendant that it was not; that the words ' and you do swear that there is no collusion, understanding, or agreement whatever between yourself and the defendant herein, in relation to this, your application for divorce,' were not included in the oath that was administered to him.

" Now, if that is true, you should find the defendant not guilty.   *    *    *    It is a question for you to determine, from the evidence in the case, whether the oath was administered as claimed by the prosecution,—the whole oath,—or whether it was not, as claimed by the defendant.    *    *    *

" It is claimed on the part of the defendant that he did not know the contents of this bill.    *    *    *    If the

statements I have referred to you for your consideration were in fact in the bill of complaint, and sworn to by the defendant, and such statements, or any of them, were false in fact, yet if the defendant did not in fact know they were contained in the bill, but honestly supposed the bill contained only true statements, or such as he honestly believed to be true, and was deceived as to the real statements contained in the bill, and swore to it under the advice of his counsel, and did not knowingly and intentionally swear to statements he knew to be false, he should be acquitted."

This charge is certainly as fair to the defendant as he was entitled to under the circumstances, unless the points made in the brief of his counsel can be sustained as a matter of law, and which we shall discuss further on.

There does not appear to be much contradiction in the record upon the questions of the untruthfulness of the statements in the bill.    In fact, it is practically conceded that the defendant, on July 30, 1887, was married to Anna Gertrude Carper at the city of Chicago, Illinois, by one William S. Post, a minister of the gospel.    Shortly after their marriage, in August, 1887, defendant and his wife went to live at Windsor, Ontario, where they resided until sometime in February, 1888, when they removed to Detroit, Michigan.

About April 25, 1888, Mrs. McCaffrey left Detroit to go to Ohio to visit her sister, intending to return on July 4, 1888, to her husband.    McCaffrey was in constant correspondence with her during her stay there, writing her in the months of May, June, and up to July 17, 1888.

On June 12, 1888, not two months after Mrs. McCaffrey had gone on her visit, this bill was filed, charging the marriage to have taken place on May 10, 1874, at Ogdensburg, St. Lawrence county, New York, and the desertion as commencing December 1, 1885, some 19 months before the marriage actually took place.

The contention of defendant's counsel, however, is—

1. That the bill for divorce filed by defendant in the circuit court for Macomb county, in chancery, was filed in a

court which had no jurisdiction of the cause, as shown by the bill itself and the evidence in the case, and that, although the defendant may have sworn falsely to the bill, he is not guilty of perjury.

2. That perjury cannot be predicated upon the oath to a bill for divorce.

3. That the evidence is uncontradicted that the clause as to collusion was added to the jurat after the oath was administered.

4. That the evidence is uncontradicted that the bill was not read over to defendant, or read to him before he signed it.

We shall discuss these questions in their inverse order. While no direct testimony was given showing that the bill was read over to the defendant before signing, yet the circumstances surrounding the case, the letter written by defendant for Mrs. Judson to sign, which was to be forwarded to Salisbury, and his conversation with Mrs. Judson as detailed by her, show very conclusively that the defendant knew what the bill contained, and that the time of the marriage was purposely stated in the bill at a time anterior to the time when the marriage actually took place, to the knowledge of defendant.

One cannot read the testimony contained in this record without coming to the conclusion that the defendant was attempting, with the aid of his solicitor, to perpetrate a fraud upon the court, and a grievous wrong upon his wife, and obtain a divorce, intending to marry again within a short time. We think there was evidence to satisfy any fair-minded man that he knew fully the contents of the bill, and that he willfully and deliberately swore to it as true. We think, also, that there was some evidence to go to the jury upon the question whether the clause as to collusion was added to the jurat before the defendant was sworn to it.

Mr. James G. Tucker testifies that the defendant, with his solicitor, came to him with the bill, and he accompanied them to Mr. Fitch, the notary, who swore the defend--

ant to the bill, and to the usual oath was added the additional words that there was no collusion, etc.

Mr. Fitch testified that he read the oath over, and administered it, and his recollection was that these words were added, and he read the whole of it over to the defendant in administering the oath to him.

There is no force in the proposition of counsel that perjury cannot be predicated upon the oath to a bill for divorce.

Section 6623, How. Stat., provides:

"The Supreme Court shall have power, from time to time, by general rules of the Court, to establish, alter, modify, or amend the practice of the circuit courts in chancery, in the cases not provided for by statute," etc.

In pursuance of this provision of the statute, chancery rule No. 95 was adopted by this Court to govern the practice of such courts. This rule provides:

"All bills for the purpose of obtaining divorce, whether the husband or wife is complainant, shall be duly verified by oath in the usual manner of verifying bills where, by the course and practice of the court, an oath is required," etc.

In 1887 the Legislature of the State recognizing the force of the above rule, by Act No. 137, § 10, provided:

"No divorce shall be decreed in any case when it shall appear that the petition or bill therefor was founded in or exhibited by collusion between the parties, and the oath or affirmation administered to the complainant in swearing to such petition or bill shall, in addition to all other legal requirements, recite the following: 'And you do solemnly swear (or affirm) that there is no collusion, understanding, or agreement whatever between yourself and the defendant herein in relation to your application for divorce;'"—

Thus giving the rule above stated the force of statute law. The statutes of this State (How. Stat. § 92 6) further provide:

"If any person authorized by any statute of this State to take an oath, or if any person of whom an oath shall be required by law, shall willfully swear falsely in regard to any matter or thing respecting which such oath is authorized or

required, such person shall be deemed guilty of perjury," etc.

The present case is distinguishable from *People v. Gaige*, 26 Mich. 30. In that case the bill was not required to be verified by oath under any statute of this State, and it was held that perjury could not be predicated upon an oath thereto, such oath being extrajudicial.

In *Beecher v. Anderson*, 45 Mich. 543 (8 N. W. Rep. 539), it was said by this Court that where a bill in equity, not seeking discovery, is filed against a corporation, the general manager, if not himself made a defendant, need not swear to the answer, and if he does so, in a case where his oath could not affect the issue or strengthen the answer, his oath, if false, will not sustain a complaint for perjury.

In the present case, however, the complainant is compelled by express provision of the statute to verify his bill by oath. It was so verified, and perjury may be assigned upon the false allegations in the bill which are material. While it is true the bill is not used as evidence on the hearing of the matters therein stated, yet, under the provisions of the statute above cited, perjury may be predicated upon such an oath so taken.

The only remaining contention is that the circuit court of Macomb county, in chancery, had no jurisdiction, inasmuch as the bill itself did not recite the fact that either the plaintiff or defendant resided in that county, and that the proofs in the present case show conclusively that neither of them resided there at the time the bill was filed.

The bill was drafted upon an ordinary printed blank form, but the residence of the complainant as to the county was not filled in.

The Constitution and statutes of this State have in express terms conferred an equity jurisdiction upon the several circuit courts, co-extensive with that possessed by the English courts of chancery, with certain exceptions.

The Constitution, Art. 6, establishes a Supreme Court, with appellate jurisdiction, and circuit courts, which have original jurisdiction in all matters, civil and criminal, not exempted in this Constitution, and not prohibited by law.

Section 1, chap. 247, How. Stat., provides:

"That the several circuit courts of this State shall be courts of chancery within and for their respective counties," etc.

Section 21 of the same chapter provides that—

"The powers and jurisdiction of the circuit courts and circuit judges in chancery, in and for their respective counties, shall be co-extensive with the powers and jurisdiction of the courts and judges in chancery in England, with the exceptions, additions, and limitations created and imposed by the Constitution and laws of this State."

These provisions were also found in the Revised Statutes of 1846, c. 90, which established the former court of chancery. Section 21 was also found in the Revised Statutes of 1838, and applied to the then existing separate courts of chancery.

It is claimed, however, by counsel for defendant, that section 6228, How. Stat., limits the jurisdiction of the court of chancery in divorce cases to the county where the parties or one of them reside. This section provides:

"A divorce from the bonds of matrimony may be decreed by the circuit court of the county where the parties or one of them reside, or by the court of chancery, on the application by petition or bill of the aggrieved party," etc.

By this limitation it is claimed the circuit court, in chancery, of Macomb county, had no jurisdiction over the person of the complainant in that case, although the bill was regularly filed in that court. The complainant, in filing his bill had, however, submitted himself to that jurisdiction. That court is one of general jurisdiction. Its process is co-extensive with the boundaries of the State, and the failure to allege his res-

idence within that particular county was not a jurisdictional defect.

The statute does not make this a necessary allegation in the bill, but such fact and the omission to allege it may be cured by amendment, though this fact must be made to appear in the proofs in order to give relief.

The record shows a residence within the State a sufficient length of time, before exhibiting the bill, to give the court jurisdiction, and, if a defect at all, it could be cured by amendment. The bill contained sufficient allegations, which, if true, made a proper case for relief in that court.

The fact that upon the trial of the present case it was made to appear that neither party had resided within the State the length of time required by the statute to give the court jurisdiction of the cause could not affect the question involved here.

Perjury is assigned upon the allegations contained in the bill then filed on June 12, 1888, and the case is brought clearly within the provisions of section 9236, How. Stat., above cited.

We find no error in the refusal of the court to instruct the jury upon this part of the case as requested by defendant's counsel. It is very clear that the defendant willfully, corruptly, and deliberately had inserted into his bill certain matters which he knew to be false. These matters were material, and were placed in the bill for the purpose of bringing the case within the statutes of this State giving the court power to grant the divorce on the ground of desertion.

We have no doubt that these matters were alleged in the bill with the full knowledge of the defendant as well as his solicitor, and that the defendant took the oath as stated in and attached to the bill; and if this solicitor entered into this scheme—which seems apparent from the record—to perpetrate this fraud upon the court, and to commit so great a

wrong upon the wife of respondent, drafted the bill, and inserted therein these false statements and dates, and knowingly procured and advised the respondent, acting as his solicitor, to swear to the same, it would seem to be the duty of the officers of that county to investigate the matter, and see if he has made himself amendable to the criminal law.

We find no error in the record, and the conviction must be affirmed.

CHAMPLIN, MORSE, and CAMPBELL, JJ., concurred. SHER-WOOD, C. J., did not sit.