IRON MOLDERS' UNION, LOCAL NO. 68, et al. v. NILES–BEMENT–POND CO. et al.

(Circuit Court of Appeals, Sixth Circuit. November 6, 1918.)

No. 3146.

1. COURTS ⊚⇒317—JURISDICTION OF FEDERAL COURTS—DIVERSITY OF CITIZENSHIP—ALIGNMENT OF PARTIES.

In determining jurisdiction of a federal court, parties must be aligned as plaintiffs or defendants, respectively, according to their mutual interests.

2. COURTS ⊚⇒317—JURISDICTION OF FEDERAL COURTS—DIVERSITY OF CITIZENSHIP—ALIGNMENT OF PARTIES.

In a suit by a corporation against a subsidiary corporation, of which complainant has complete control through stock ownership and common officers, and numerous ex-employés of defendant company and local labor unions, to enjoin acts of the latter named defendants growing out of a strike, and in which no relief is asked against the corporation defendant, such defendant must be aligned with complainant, and, if it is an indispensable party, the fact that it is a citizen of the same state as its codefendants will defeat the jurisdiction of a federal court.

3. INJUNCTION ⊚⇒114(3)—INDISPENSABLE PARTIES.

To a suit by a corporation against another corporation and its striking employés, to enjoin the latter from interfering with its business and present employés, the defendant corporation is an indispensable party; its rights as against those of its codefendants being necessarily involved.

Appeal from the District Court of the United States for the Southern District of Ohio; John E. Sater, Judge.

Suit in equity by the Niles-Bement-Pond Company against the Niles Tool Works Company, the Iron Molders' Union, Local No. 68, and others. From an order granting a preliminary injunction, certain of the defendants appeal. Reversed.

For opinion below, see 246 Fed. 851.

W. B. Rubin, of Milwaukee, Wis., and R. J. Shank, of Hamilton, Ohio, for appellants.

Murray Seasongood, of Cincinnati, Ohio, and Allen Andrews, of Hamilton, Ohio, for appellees.

Before KNAPPEN and DENISON, Circuit Judges, and McCALL, District Judge.

PER CURIAM. [1] This case presents a question of jurisdiction of the District Court, dependent entirely upon diversity of citizenship. The bill was filed by appellee Niles-Bement-Pond Company, a New Jersey corporation, as sole plaintiff, against the Niles Tool Works Company, an Ohio corporation, doing business at Hamilton, Ohio (hereinafter called the defendant company or the Tool Works), together with a large number of individual defendants (including two unincorporated Iron Molders' Union locals, located at Hamilton); the others being officers, representatives, or members of the respective unions or persons acting in sympathy therewith. The individual de-

fendants are all residents of Ohio. If the defendant company is properly aligned with the individual defendants, jurisdiction exists. If, however, it should be aligned as a coplaintiff, jurisdiction fails; for, in determining jurisdiction, the parties must be aligned, as plaintiffs or defendants, respectively, according to their mutual interests. Dawson v. Columbia Trust Co., 197 U. S. 178, 25 Sup. Ct. 420, 49 L. Ed. 713; Hamer v. N. Y. Railways Co., 244 U. S. 266, 274, 37 Sup. Ct. 511, 61 L. Ed. 1125.

[2] This suit is an outgrowth of a strike by former employés of the Tool Works (the defendant company) who are members of one of the Molders' Union locals. Its object is to restrain defendants other than the Tool Works from acts of intimidation, threats, abuse, and violence directed toward the Tool Works' employés and their families, as well as the congregating by individual defendants, and those acting in concert or sympathy with them, at or about the Tool Works factory and plant, as well as at the homes of that company's workmen. The District Court granted a preliminary injunction. 246 Fed. 851. This appeal is from that action.

Plaintiff's interest in and relations to the strike, and the grounds on which its claim to relief is based, are these: It has contracts for machinery and munitions to be furnished the government of the United States, amounting in value to about $3,000,000, the greater part thereof being for work necessary for the prosecution of the present war; its contracts therefor being either directly with the government or with concerns which have such contracts therewith, priority for such work being given by the National Defense Act (Act June 3, 1916, c. 134, 39 Stat. 166). Plaintiff has placed orders for a large amount of this work with the defendant company and cannot well have it performed elsewhere; the work so contracted for being nearly all partially manufactured and constructed, and being of such kinds and sizes that it cannot profitably be removed from the Tool Works' plant or completed elsewhere. Indeed, industrial plants generally which are equipped for manufacturing this class of machinery have prior orders in such amount as to forbid taking on the orders in question. Plaintiff is also prevented by the strike from taking further profitable contracts for similar work offered by the governments allied with the United States, as well as by other contractors. The strike will occasion plaintiff heavy loss of profits, besides subjecting it to danger of forfeiture of contracts and large damages. But for the threatened violence on the part of strikers and sympathizers, the defendant company could perform the contracts with plaintiff.

It is clear that plaintiff has a right to complain of unlawful injuries to its rights, but it seems equally clear that the defendant company, if it is to be a party, is interested on the same side of the suit with plaintiff, and that as between these two parties there is no adverse interest. The plaintiff absolutely controls the defendant company, through plaintiff's ownership of the entire common stock and a majority of the preferred stock of that company—the two corporations having a common president, one vice president in common, a majority of the board of directors of the defendant company be-

ing also directors of the plaintiff company. Each company, however, has a separate manager. The defendant company is essentially a subsidiary of the plaintiff. Ninety-five per cent. of the work done by the defendant company is allotted to it by the plaintiff. From the gross price under plaintiff's contracts with the government and others so allotted to defendant company, plaintiff receives a commission of 10 per cent. The defendant company receives the balance. The president of the two companies is authorized to fix the prices under its contracts with the government and others, and thus in effect the prices which the defendant company shall receive. Naturally and normally, the two corporations would stand together in every way, so far as their interests in this suit are concerned. That they do so stand together is affirmatively shown. The defendant company employed and paid the guards and watchman, and the representatives of the two companies consulted together regarding the strike, "how to manage it and how to get men into the foundry." The defendant company seems not to have appeared of record in the suit; its works manager testified that he "should say" that the counsel present at the trial [employed by plaintiff] represented both plaintiff and defendant company (presumably in reference to the conduct of the strike), that the witness had consulted with the attorneys named "in regard to matters connected with this strike," and that one of them represented the defendant company when one of the strikers was arrested, apparently during the strike now in question.

The bill states no case for relief against the defendant company and no such relief is asked, unless by the general prayer that the "court grant plaintiff any and all other equitable relief which in equity and good conscience it is entitled to receive." Indeed, plaintiff's control of the defendant company, and the complete harmony between them, renders relief at the hands of the court as against defendant company entirely unnecessary. It is equally clear that the interests of the defendant company and those of the individual defendants are wholly adverse to each other.

[3] The pivotal question thus is whether the defendant company has such a real interest in the subject-matter of the litigation as to render its presence necessary to make the final decree effectual. If so, it is an indispensable party. Hamer v. N. Y. Railways Co., 244 U. S. 266, 274, 37 Sup. Ct. 511, 61 L. Ed. 1125, and cases there cited; Steele v. Culver, 211 U. S. 26, 29, 29 Sup. Ct. 9, 53 L. Ed. 74; Lindauer v. Compania Palomas, etc. (C. C. A. 8) 247 Fed. 428, 432, 159 C. C. A. 482; South Penn Oil Co. v. Miller (C. C. A. 4) 175 Fed. at page 737, 99 C. C. A. 305; Waterman v. Canal-Louisiana Bank, 215 U. S. 33, 49, 30 Sup. Ct. 10, 54 L. Ed. 80; Gen. Investment Co. v. Railroad Co. (C. C. A. 6) 250 Fed. 160, 170, 162 C. C. A. 296.

We think this question must be answered in the affirmative. Treating the defendant company as an independent corporation as fully as plaintiff claims it to be, its interest in the settlement of the controversy between itself and its employés is direct and immediate, while that of the plaintiff is indirect and derivative. The court could

not decide in favor of the individual defendants without deciding against the asserted rights of the defendant company. Such adverse decision might well be disastrous to that company, and could not be made in its absence. On the other hand, a determination in favor of plaintiff would necessarily involve a determination in favor of the defendant company as against its employés, in respect of which the defendant company is vitally and immediately interested, and on which the court would require it to be heard. Moreover, the individual defendants have the right to have those issues settled as between themselves and defendant company. Jenney v. Hayden (C. C.) 171 Fed. 898, 899. Again, while the suit cannot be said to be collusive within the rule in Miller & Lux v. East Side Canal Co., 211 U. S. 293, 29 Sup. Ct. 111, 53 L. Ed. 189, and kindred cases, and not collusive in any vicious sense, yet, however much plaintiff may have been justified in preferring the federal court, it is apparent that the making of the Tool Works a defendant, instead of a coplaintiff, was "merely a contrivance between friends for the purpose of founding a jurisdiction which otherwise would not exist." Dawson v. Columbia Trust Co., 197 U. S. 178, 181, 25 Sup. Ct. 420, 422, 49 L. Ed. 713; Hamer v. Railways Co., supra, 244 U. S. at page 274, 37 Sup. Ct. 511, 61 L. Ed. 1125. The very omission of any real prayer for relief against the defendant company "shows that properly it is to be treated as a plaintiff." Steele v. Culver, supra, 211 U. S. at page 29, 29 Sup. Ct. 9, 53 L. Ed. 74. And see Dawson v. Trust Co., supra, 197 U. S. at page 180, 25 Sup. Ct. 420, 49 L. Ed. 7.

We scarcely need say that we see no merit in the suggestion that the joinder of the defendant company as coplaintiff would make the bill multifarious. The case is not like Helm v. Zarecor, 222 U. S. 32, 36, 32 Sup. Ct. 10, 56 L. Ed. 77, where the party whose alignment was in question took sides with neither of the real parties to the controversy, but was merely the holder of the title, which might go to one or the other of the real parties. Nor is it governed by the rule announced in Metropolitan Railway Receivership Case, 208 U. S. 90, 28 Sup. Ct. 219, 52 L. Ed. 403, where jurisdiction over a proper receivership, in a case of actual diversity of citizenship, was not allowed to be defeated merely because both parties preferred the federal court and united in having the proceeding in that court. Nor is it within the rule pertaining to a suit by a stockholder on behalf of a corporation (such as Doctor v. Harrington, 196 U. S. 579, 25 Sup. Ct. 355, 49 L. Ed. 606), where the latter refuses to act.

Plaintiff, however, bases here its claim to jurisdiction, as it did below, on Carroll v. Chesapeake & Ohio Coal Agency Co. (C. C. A. 4) 124 Fed. 305, 61 C. C. A. 49. In that case, which was an appeal from a refusal to dissolve an injunction, the plaintiff corporation, engaged in the business of selling coal and coke, had contracts with defendant coal companies by which it was to take and pay for their product at the mines, to furnish transportation, and sell at prices fixed by the companies, receiving a stipulated sum per ton for its services. By the terms of the contracts the defendant companies were not liable for damages for failing to furnish coal or coke to plaintiff where such

failure was caused by strikes. In reliance on such contracts, plaintiff had contracted for the sale of large quantities of coal and coke, which could only be supplied by the mines of the defendant companies, and which the latter were prevented from furnishing by the acts of the individual defendants, who were conducting a strike among the miners, and who by intimidation and threats prevented others from working in the mines. It was held that the bill showed an interest in plaintiff so different from that of the coal companies as to entitle the plaintiff to maintain the suit in its own right, independently of those companies, and that the latter could not be aligned with plaintiff to defeat jurisdiction.

Assuming that the Carroll Case was properly decided, yet the differences between that case and this are radical. There the plaintiff could not control the coal companies; the latter were alleged to be irresponsible, and injunction was asked to restrain them from allowing the individual defendants or others to do acts tending to interfere with the working of the coal companies' employés. The court's opinion commented upon this prayer. Here, as already said, there is no such prayer, and no suggestion of insolvency; and plaintiff can absolutely control the action of the defendant company. There the plaintiff was, at the most, the sales agent of the coal companies; here the relations were quite different. Plaintiff's contracts with the government and others are made parts of its contracts with the defendant company, which, if the contracts are not fulfilled, must suffer in direct correspondence with plaintiff. There a distinction was drawn between the injuries suffered by the plaintiff and the companies, respectively, in that the former, by its failure to obtain coal and coke, would not only incur heavy and immediate pecuniary loss but suffer utter destruction of its business; while the latter would suffer merely an interruption in the profits, which, as they still had the mines, they could recoup when work was resumed. Indeed, if the prices of coal had increased, it was to the interest of the coal companies to escape from their contracts, without liability, through the medium of the strike. Here the differences between the injuries to plaintiff and the defendant company, respectively, are largely, if not entirely, of degree. Here there is no claim of fault on the part of the defendant company; there, in commenting on the alleged misjoinder of the coal companies as defendants, the court distinctly recognized the possibility of actual fault on their part, saying:

"It is the duty of the coal companies to have the mines worked; that of the individual defendants not to obstruct this operation. Discharging their duty, the coal companies should exhaust effort in obtaining workers for their mines, and in restraining and preventing the obstruction of the work. Non constat that the action of the individual defendants may not have been taken because of some acts of omission or commission on the part of the coal companies. At least complainant has the right to know about this, and the coal companies have the right to disavow and disprove it. Until this is done, the fault may lie with the coal companies and the individual defendants, with either or both."

We cannot accept the Carroll Case as an authority for jurisdiction here. The instant case is such as to make its failure for lack of juris-

diction unfortunate; but the conclusion that jurisdiction was lacking seems inevitable.

It results that the order complained of must be reversed, and the record remanded, with directions to dismiss the bill.