## WEST v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. April 8, 1919.)

No. 3210.

1. PERJURY ⟁29(4)—VARIANCE.

An indictment for perjury under Comp. St. § 1687, which averred that the oath was taken by accused "before" a District Judge named, *held* supported by proof that the oath was taken in open court presided over by such judge, and was administered by the deputy clerk of the court.

2. CRIMINAL LAW ⟁1186(4)—REVERSAL—TECHNICAL ERROR—VARIANCE.

Assuming that an indictment for perjury must be construed as averring that the oath was administered by the judge, whereas the proof was that it was administered by the deputy clerk in open court, the variance, where not prejudicial to defendant, is not ground for reversal, under Judicial Code, § 269, as amended by Act Feb. 26, 1919, which requires the court on any writ of error to give judgment on the entire record, "without regard to technical errors, defects or exceptions which do not affect the substantial rights of the parties."

3. PERJURY ⟁9(1)—JURISDICTION OF COURT.

False swearing by a witness on hearing of a motion for preliminary injunction in a federal court *held* to constitute perjury, where the bill alleged facts showing diversity of citizenship which gave the court jurisdiction, although the testimony developed an identity of interest, between complainant and one of defendants which required the latter's alignment with complainant and defeated jurisdiction.

4. CRIMINAL LAW ⟁365(3)—EVIDENCE—RES GESTÆ.

Where, in a trial for perjury, it became an issue of fact whether defendant assaulted and struck another during a strike, testimony that immediately after striking such person defendant followed up and struck his companion, who was associated with him in work, *held* admissible as part of the res gestæ.

5. CRIMINAL LAW ⟁1159(2)—REVIEW ON ERROR—SUFFICIENCY OF EVIDENCE.

Where there is substantial testimony supporting the verdict in a criminal case, it cannot be disturbed by an appellate court on the ground of insufficiency of evidence.

In Error to the District Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

Criminal prosecution by the United States against William West. Judgment of conviction, and defendant brings error. Affirmed.

Robert J. Shank, of Hamilton, Ohio, for plaintiff in error.
James R. Clark, Asst. U. S. Atty., of Cincinnati, Ohio.

Before KNAPPEN and DENISON, Circuit Judges, and EVANS, District Judge.

KNAPPEN, Circuit Judge. On September 14, 1917, the Niles-Bement-Pond Company, which was interested in the Niles Tool Works Company, of Hamilton, Ohio, filed bill in equity in the District Court for the Southern District of Ohio, against an Iron Molders' Union local and a large number of other defendants, including plaintiff in error herein, asking injunction (amongst other things) against threatening, intimidating, interfering with, assaulting, and applying abusive language to the tool company's workmen and others wishing to work for it, and from congregating in the streets of Hamilton, Ohio; a strike, affecting the employés of the tool company, being then in progress. The tool company was made a defendant. On the hearing of the application for preliminary injunction, plaintiff in error testified in open court that on the 10th day of September, 1917, he talked with a workman named Wise in front of the house of one Bruning, in Hamilton, telling Wise to join the union, that "your brothers are in there; why don't you come over and be right, too," but denying that he said anything would happen to Wise if he did not do so, or that he struck Wise or any one else.

An order for injunction made by the District Court was reversed by this court, with direction to dismiss the bill for lack of diversity of citizenship, resulting from a necessary alignment of the tool company as coplaintiff with the Niles-Bement-Pond Company, due to their mutual interest in the injunction suit. Iron Molders' Union Local No. 68 et al. v. Niles-Bement-Pond Co. (No. 3146, decided by this court Nov. 6, 1918) 258 Fed. 408, —— C. C. A. ——. Meanwhile, plaintiff in error was indicted in the court below for perjury in so testifying on the application for injunction. This writ is brought to review a conviction thereunder.

[1] 1. The testimony on the trial of the perjury charge showed that the oath taken by plaintiff in error on the hearing of the injunction application (over which Judge Sater presided) was actually administered in open court by the deputy clerk of that court. The indictment averred that the oath was taken *before*—

"his honor, John E. Sater, a legally appointed, qualified and acting United States Judge for the Southern District of Ohio, said court being a competent tribunal and said John E. Sater being a competent officer and person before whom such oath is authorized by the laws of the United States to be administered."

The statute (U. S. Comp. St. 1916, § 1687) provides that in an indictment for perjury:

"It shall be sufficient to set forth the substance of the offense charged upon the defendant, and by what court, *and* before whom the oath was taken, averring such court or person to have competent authority to administer the same, * * * and without setting forth the commission or authority of the court or person before whom the perjury was committed."

The indictment was sufficient in form, and the deputy clerk had full authority to administer the oath in the court's presence. Comp. St. 1916, § 1337. It was not necessary to allege the name of the clerk who administered the oath or that of the judge who took it. United States v. Walsh (C. C.) 22 Fed. 644, 646; United States v.

Howard (D. C.) 132 Fed. 325, 335, 341. The act of the clerk, in the presence of the court, was the act of the court. United States v. Howard, supra, 132 Fed. at page 341. Apparently the word "and," italicized above, means "or." United States v. Walsh, supra. If there is merit in the objection that the evidence of the administering of the oath was insufficient, it can only be because of a fatal variance between the indictment and the proof. There was no variance whatever, unless the indictment must be construed as alleging that Judge Sater personally administered the oath, as distinguished from being the judge, "before" whom the oath was taken or "before whom" it was "authorized * * * to be administered."

[2] It is not entirely clear that the indictment requires such construction. But, assuming that the intention was to charge that Judge Sater personally administered the oath, we think that, upon the record in this case, the variance was not fatal. Were there reason to believe that plaintiff in error was misled to his prejudice, in preparation for defense or otherwise, by an allegation, express or implied, however unnecessarily made, that Judge Sater personally administered the oath, the case would be different; but the record removes all reasonable possibility of misleading or surprise, for not only was there no suggestion of that nature on the trial, but the testimony that the clerk administered the oath was received without objection and was uncontroverted, and plaintiff in error expressly admitted, as a witness, that he gave on the hearing of the injunction application the precise testimony introduced by the government through the stenographer who took it. The frame of the indictment is such as to preclude all possibility of a second prosecution for the same offense.

Section 1691 of the Compiled Statutes provides that—

"No indictment * * * shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

And section 269 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1163 [Comp. St. § 1246]), as amended February 26, 1919 (40 Stat. 1181, c. 48), declares that—

"On the hearing of any * * * writ of error * * * in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

While neither of these sections attempts to sanction a violation of substantial rights, or to disregard prejudice (Markham v. United States, 160 U. S. 319, 16 Sup. Ct. 288, 40 L. Ed. 441), yet an immaterial and nonprejudicial variance between allegation and proof is not cause for reversal. See Matthews v. United States, 161 U. S. 500, 16 Sup. Ct. 640, 40 L. Ed. 786, where a variance of one day in the date on which the testimony was alleged to have been given in open court trial was held immaterial; Hogue v. United States, 192 Fed. 918, 114 C. C. A. 11, where an obviously clerical mistake in

using the name "clerk," instead of "court," was held not vital, the court failing "to find by such mistake that plaintiff in error was in any wise misled or prejudiced"; Daniels v. United States, 196 Fed. 459, 464, 465, 116 C. C. A. 233, where we held that evidence that bankrupt may have owed the payee $200 was not a material variance from the charge in the indictment that the debt owed did not exceed $50, the exact amount not being material; and see United States v. Howard, supra, where it was held (132 Fed. 334, 335) under what is now section 1691, supra, that leaving blank the day of the month on which the perjury was alleged to have been committed did not vitiate the indictment.

In our opinion, the objection of variance is without substance.

[3] 2. On the trial of the perjury charge below there were introduced the Niles-Bement-Pond Company's petition (or bill) for injunction; the motion to dismiss made by defendants other than the tool works, on the ground, among others, of lack of diversity of citizenship; the plea of abatement of the defendants other than the tool works, alleging lack of jurisdiction by reason of collusion between the Niles-Bement-Pond Company and the tool works to give such jurisdiction; and the order allowing the preliminary injunction from which the appeal was taken to this court. The motion to dismiss was denied before the hearing of the application for temporary injunction was taken up. The plea in abatement does not appear to have been formally passed upon.

Plaintiff in error contends that the record showed no jurisdiction in the court below over the hearing of the injunction application, that plaintiff in error thus could not have been guilty of perjury, and that his motion to dismiss should have been granted. The decision of this court, since the conviction below, directing the dismissal of the bill for lack of jurisdiction is invoked.

It is the well-established general rule that perjury cannot be predicated of a false oath in a proceeding before a court which had no jurisdiction to inquire into the matter which was the subject of that proceeding,[1] as, for example, where the proceeding in which the oath was taken was one wholly unauthorized by law (State v. Gates, 107 N. C. 832, 12 S. E. 319), or where it did not appear that there was pending any writ or entry forming the basis for the testimony (State v. Hanson, 39 Me. 337), or where the special tribunal before whom the testimony was taken was illegally appointed and without authority to act (Com. v. Hillenbrand, 96 Ky. 407, 29 S. W. 287), or where testimony was taken under a wrongly assumed authority to try a case on its merits rather than merely to take the examination of a party (Hamm v. Wickline, 26 Ohio St. 81).

To this general rule there are a number of limitations, as, for example, where a court has jurisdiction of the subject-matter and of the parties, and the testimony given is material to the inquiry then before the court, false swearing is perjury, although the proceed-

---

[1] See note to Morford v. Oklahoma, 54 L. R. A. 513, on "Perjury as Affected by Invalidity of Proceeding in Which Testimony is Taken."

ings may be so irregular or erroneous as to require reversal on appeal (State v. Walton, 53 Or. at page 567, 99 Pac. 431, 101 Pac. 389, 102 Pac. 173 and cases there cited); and perjury may be committed on a trial under an indictment which is afterwards held insufficient (State v. Rowell, 72 Vt. 28, 47 Atl. 111, 82 Am. St. Rep. 918); and there may be jurisdiction in the absence of proof of facts dehors the record, which would be defeated by the presence of such proof (State v. Ridley, 114 N. C. 827, 19 S. E. 149).

It follows that, although a court may not have jurisdiction to proceed to judgment, it may have jurisdiction to take cognizance of a case in the first instance and until the facts showing lack of jurisdiction appear; and testimony given on a record showing jurisdiction is none the less perjury because facts later appear defeating jurisdiction, as, for instance, in suits for divorce in which the residence of a party within the state is necessary to relief or, in some cases, even to the jurisdiction of the court, false swearing to a bill showing such residence or jurisdiction, or false testimony in a suit under such bill, is perjury although it turns out that the right to relief, or even jurisdiction, is defeated by the absence of the asserted residence (People v. McCaffrey, 75 Mich. 115, 42 N. W. 681; Stewart v. State, 22 Ohio St. 477; Markey v. State, 47 Fla. 38, 37 South. 53).

Decisions in cases where the court has jurisdiction over the parties and over the subject-matter are not necessarily in point; and the same is true of cases holding that lack of jurisdiction over the person has been waived. We must reckon with the fact that the jurisdiction of the District Court was entirely dependent upon diversity of citizenship, and that lack of jurisdiction was not the subject of waiver. Interior Construction Co. v. Gibney, 160 U. S. at page 219, 16 Sup. Ct. 272, 40 L. Ed. 401. For the purposes of this opinion, we assume that the case is the same as if the District Court had itself, at the conclusion of the testimony, dismissed the suit for lack of jurisdiction, instead of making the order for injunction. We shall also assume that, if the petition for injunction had conclusively shown upon its face a lack of diversity of citizenship, the alleged false testimony would not amount to perjury.

The situation, however, is this: The petition for injunction in terms alleged diversity of citizenship between the Niles-Bement-Pond Company and the tool works. It set out the plaintiff's interest in and relations to the strike and the grounds on which its claim to relief are based in substance as given in the paragraph relating thereto on page 2 and the early part of page 3 of our opinion in No. 3146, supra (258 Fed. 409). But of the many facts otherwise enumerated on page 3 of that opinion (258 Fed. 409, 410) the only one appearing in the petition is this:

"The plaintiff has practically the exclusive sale of the output of said [tool] company, selling approximately 95 per cent. of the products manufactured by that company, and has a large ownership of the stock of the defendant company."

We think the petition, standing alone, was not subject to motion to dismiss for lack of diversity of citizenship. The Niles-Bement-

Pond Company's right to the exclusive sale of the tool company's output, and the former's interest in the latter's performance of subsisting contracts, tended to show an independent right to file a bill for relief; and the mere fact of its large ownership of stock in the tool company did not necessarily make the latter company merely a subsidiary of the former, nor did it amount to an assertion that the latter is actually dominated and controlled by the former. C., M. & St. P. R. R. v. Minneapolis Ass'n, 247 U. S. at page 500, 38 Sup. Ct. 553, 62 L. Ed. 1229; Bigelow v. Calumet & Hecla Min. Co. (C. C. A. 6) 167 Fed. 721, 94 C. C. A. 13. True, the failure of the bill to ask relief against the tool company (unless by the clause in the prayer "that the plaintiff recover of the defendants its damages suffered"—the bill elsewhere characterizing the tool company as the "defendant company"), and (as we held in No. 3146) its failure to state a case for such relief strongly suggested that the tool company was made a defendant merely for the purpose of giving a fictitious appearance of jurisdiction. But the bill was amendable in these respects (if the facts would justify, People v. McCaffrey, supra), even on the hearing of the plea in abatement, and, being so amendable, did not conclusively show lack of jurisdiction to hear the application for temporary injunction, even though, as it finally turned out, the facts would not justify amendment in these respects.

Upon the hearing of the injunction application plaintiff in error was sworn as a witness. It was in the course of that examination that the alleged false testimony was given. During the hearing of the injunction application the other facts recited on page 3 of our opinion in No. 3146 (258 Fed. 409, 410) were developed, which contributed largely to our conclusion of identity of interest in fact between the two corporations. Probably no one would doubt the court's jurisdiction to take testimony directly upon the question of that jurisdiction (Markey v. State, supra); but we think it clear that the court had jurisdiction to receive testimony in a single hearing upon the merits of the application for injunction in connection with the subject of its own jurisdiction, and that false testimony relating to the merits, in the connection stated, would constitute perjury equally as if aimed directly at jurisdiction. The alleged false testimony was material to the issue on the merits. We cannot think that the question of jurisdiction to take plaintiff's testimony, and thus the question of perjury or no perjury in giving it, could depend upon the subsequent affirmative conclusion, largely from testimony dehors the record, that the actual diversity of citizenship between plaintiff and the tool company, alleged in the bill and existing in fact, failed to give jurisdiction because of identity of interest between those parties.

[4] 3. The alleged assault on Wise occurred while he, Reichel, and a few other molders were being escorted by guards from the works to their respective homes, accompanied by a large and excited crowd said to contain several hundred people. There was testimony that Wise and Reichel were together until Wise was stopped and was engaged in conversation, and was subsequently struck by plaintiff in error, in front of Bruning's gate on Third street; Reichel having

meanwhile moved south in the crowd to an alley called Race street, which formed the southern boundary of the Bruning lot. Against objection of irrelevancy and incompetency, the government was permitted to show that plaintiff in error struck Reichel at the alley at a point, according to the varying statements of witnesses, from 15 to 50 feet from Bruning's gate. The trial judge, in a charge to which no exception was taken, instructed the jury that the issue was merely "what took place between [plaintiff in error] and Carl Wise in front of Bruning's house on the 10th of September, and what was there said and done," and 'that plaintiff in error should be acquitted "if he did not hit Wise at that time and place"; that he was not on trial for striking Reichel, and that the testimony concerning the alleged striking of the latter was admitted "for the purpose of letting the jury see the whole scene and what was taking place at that time, because whatever happened, happened within a very short time, there is evidence tending to show. So what was going on, and the circumstances under which the conversation took place between Wise and West, and as reflecting upon the conversation and the credibility of the witnesses."

The question is whether the alleged assault on Reichel falls within the rule which admits proof of acts committed as a part of the same transaction or a continuation of the main transaction, for while plaintiff in error was not on trial for assault or threats, but for perjury, the issue of fact was the same, viz. whether the alleged assault and threats were actually made, and on this issue the rule of evidence would be the same. A correct statement of the rule of res gestæ and its limitations is found in 16 Corpus Juris, 572–574, which we quote in the margin.[2] Whether or not the rule of res gestæ applies here

[2] "I. *Res Gestæ.* 1. *In General.*—Matters constituting a part of the res gestæ are admissible in evidence, the rules as to admissibility, and as to what constitutes the res gestæ, being the same in criminal as in civil cases. The res gestæ is not confined to the act charged, but includes acts, statements, occurrences, and circumstances forming a part or a continuation of the main transaction. Conversely, matters so separated or disconnected in point of time or circumstance from the act charged as not to be a part of a continuous transaction are no part of the res gestæ of the act. While the question of res gestæ depends in a great measure on the circumstances of each case, especially as regards the matter of time, and a certain measure of discretion is vested in the trial court, certain general principles are regarded as well settled. For an act or declaration to be included in the accompanying circumstances which may be given in evidence with the principal fact or transaction, there must be a principal fact or transaction, the idea of res gestæ presupposing a main fact; and to be admissible as part of the res gestæ the act or declaration must be substantially contemporaneous with the main fact, must spontaneously spring out of it, must tend to illustrate, elucidate, or characterize it, must so harmonize and be connected with it as obviously to constitute one transaction, and must not in effect be a mere narrative of a past occurrence. However, the word 'contemporaneous', as employed in the rule, is not to be taken in its strict meaning, nor is time the only criterion for determining whether a thing said or done is part of a given transaction, although closeness in point of time is an element for consideration; the ultimate test is spontaneity and logical relation to the main event, and where an act or declaration springs out of the transaction while the parties are still laboring under the excitement and strain of the circumstance and at a time so near it as to

depends on whether the record would reasonably support a conclusion that the alleged assaults on Wise and Reichel were, in effect, parts of one and the same transaction, and substantially contemporaneous.

There was testimony that while plaintiff in error was talking to Wise, after calling him a "scab" and threatening to "get him" if he returned to work the next day, some one in the crowd around Reichel called out "Hit him," whereupon plaintiff in error struck Wise and went hurriedly to the place where Reichel was apparently already under assault, and there struck Reichel. According to this testimony, the difference in time between the two alleged assaults was not necessarily more than a very few seconds. Considering all the evidence in the case, including the attempt (which it was open to the jury to infer) on the part of strikers and strike sympathizers to prevent operation of the works, the occasion for the gathering of the crowd, its hostility generally toward employés persisting in remaining at the works, and the permissible inference that plaintiff in error, who was a member of the Molders' Union local, was a strike sympathizer, we think it would support a finding that the two alleged assaults were practically contemporaneous, and were parts of one and the same transaction. This being so, it was not error to admit it or to refuse to instruct the jury not to consider it.

This view is specifically supported by Smith v. State, 88 Ala. 73, 76, 7 South. 52, 53, where in a prosecution for murder it was said that the act of the defendant, after inflicting a death wound on the deceased, in pursuing the latter's companion, and firing at him as he ran, "was not only part of the res gestæ, but tended strongly to show the hostile spirit under which he was acting"; May v. Commonwealth, 153 Ky. 141, 149, 154 S. W. 1074, where, in a prosecution for killing a woman, evidence that defendant killed the latter's husband, just before he killed her, was held admissible, not only as part of the res gestæ, but because showing the unlawful intent or motive for killing the wife, and this notwithstanding the fact that defendant had already been convicted under a separate indictment for killing the husband; State v. Schrum, 255 Mo. 273, 277, 280, 164 S. W. 202, where defendant was charged with shooting first one man and then another whom he came upon together, the shooting of the second was held admissible as part of the res gestæ upon the trial of the first; People v. Murphy, 276 Ill. 304, 306, 307, 321, 322, 114 N. E. 609, where in a prosecution growing out of a raid upon some Greeks living in a railroad car, in which one was shot within the car and the other after, in the course of the mêlée, he had gotten outside the car, the testimony as to the second homicide was held admissible on the trial of the indictment under the first, conviction being had under each indictment; State v. McCahill, 72 Iowa, 111, 116, 30 N. W. 553, 33 N. W. 599, where in a prosecution for assault, growing out of a strike, evidence of threats against another party, made immediately

preclude the idea of deliberation and fabrication, it is to be regarded as contemporaneous within the meaning of the rule. In determining what is admissible as part of the res gestæ, no distinction usually is, nor indeed can be, drawn between statements and acts."

after the killing of deceased, was held competent. For application of the rule to prosecutions for offenses other than assaults, see State v. McDowell, 61 Wash. 398, 403, 112 Pac. 521, 32 L. R. A. (N. S.) 414, Ann. Cas. 1912C, 782, and cases cited; People v. Mead, 50 Mich. 228, 231, 15 N. W. 95; Pirscher v. United States (C. C. A. 5) 133 Fed. 526, 67 C. C. A. 660; Sartin v. State, 7 Lea, 679.[3]

[5] 4. Finally, plaintiff in error contends that there was not enough substantial evidence of the untruth of his testimony in the injunction case to justify a finding of perjury beyond a reasonable doubt.

It is true that but two witnesses testified that plaintiff in error either struck or threatened Wise, and the testimony of these witnesses was directly disputed by that of seven or eight others. There were also other facts and considerations tending, in greater or less degree, to discredit the testimony of each of the two witnesses referred to. Each, however, testified positively that plaintiff in error had both struck and threatened Wise. The situation raised, at the most, a question of credibility, and the credibility of witnesses and the trustworthiness of their testimony are peculiarly questions for the jury. Rochford v. Pennsylvania Co. (C. C. A. 6) 174 Fed. 81, 83, 98 C. C. A. 105. If the jury believed these witnesses, there was substantial testimony sustaining the charge of perjury. The trial judge, who saw and heard the witnesses, denied a motion for a new trial on the ground, among others, that the verdict was not sustained by sufficient evidence and was manifestly against the weight of the evidence. We cannot disturb the verdict for insufficiency of evidence. Kelly v. United States (No. 2978, decided by this court January 7, 1919) 258 Fed. 392, —— C. C. A. ——, and cases cited in note under paragraph 5; Matthews v. United States, 192 Fed. 490, 113 C. C. A. 96.

It results from these views that the judgment of the District Court should be affirmed.

---

[3] The government contends that the record shows that the alleged assault on Reichel preceded that on Wise. If so, the evidence in question would be, if anything, even more directly in point. We think the view that the alleged assault on Wise preceded that on Reichel is the better one; but the question of priority is not, in our opinion, highly important.